Evelyn FERGUSON, Appellant
(Plaintiff below),

v.

Martin W. FERGUSON, Appellee
(Defendant below).

No. 3837.

Supreme Court of Wyoming.

March 4, 1971.

Weston W. Reeves and Graves & Smyth, Cheyenne, for appellant.

John W. Pattno, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Mr. Justice PARKER delivered the opinion of the court.

On May 22, 1963, Evelyn Ferguson (since remarried and now named Villines) was granted a divorce from Martin W. Ferguson and given custody of three minor children. A property settlement, theretofore agreed upon by the parties and made a part of the decree, provided in part that Mr. Ferguson would contribute "sufficient financial assistance to each child after the child's graduation from an accredited high school to enable him or her to attend the State University, said financial contribution for college education to be contingent upon the Husband's financial ability to then provide such financial assistance."

On July 7, 1969, Mrs. Villines, now living in Des Moines, Iowa, filed a petition for an order to show cause, alleging that defendant was financially able to pay for his daughter's college education but had after January 1969 refused to make further payment toward her education. The matter was heard in September, the parties proceeding in the trial court on the theory that the defendant had the burden of proving his financial inability. The district court found generally against the plaintiff and dismissed her order to show cause; plaintiff has appealed arguing that (1) defendant did not meet the burden of proving he was without financial ability to pay the current college expenses for his daughter (approximately $2,000 annually), (2) the trial court did not properly consider defendant's assets in determining his ability to provide support, and (3) when husband and wife enter into a property settlement agreement which provides for the support of their children that contract should be interpreted in the children's best interest, which in this case is to provide for them at this time a college education.

According to the evidence Mr. Ferguson owns a minority interest in Walter C. Ferguson & Sons, Inc., which at this time has assets of $839,950 and liabilities of $351,000. When the original divorce decree issued Mr. Ferguson was drawing annually a $3,600 salary from the corporation, and at the time of the subsequent hearing, $4,500. It was established that there was no possibility of the corporation paying a higher salary unless it borrowed funds and that

Mr. Ferguson had been told by his banker that because of lack of collateral he personally could not borrow from $1,500 to $3,000. In the banker's testimony as to the corporation's finances and Mr. Ferguson's shares in the corporation, his explanation was clear that although loans were made on a person's net worth liquid assets were requisite to the extension of credit.

Essentially it is the position of the plaintiff here under her first and second points that the corporation worth and Mr. Ferguson's interest therein as a stockholder is prima facie evidence of ability to pay the $2,000 annually for his daughter's education. Were this a matter of Mr. Ferguson's having, since the divorce, set up the corporation, we might agree; however, it is one of long standing and Mr. Ferguson is only a minority stockholder. Plaintiff also argues that this court cannot rely solely on the testimony of the banker who said he would not loan $1,500, that it was to the best interests of all concerned for him to arbitrarily turn down a loan, and in effect the turndown became a self-serving declaration; additionally, she asserts there was ambiguity as to Mr. Ferguson's ownership together with his brother and sister of some land.

We find no merit in plaintiff's arguments. Competent evidence was adduced by defendant showing his financial inability. This established a prima facie showing which was entitled to stand unless controverted. If, indeed, evidence was available which would have refuted his proof, it was incumbent upon plaintiff to produce it at the trial. This she failed to do.

In Chorney v. Chorney, Wyo., 383 P.2d 859, 860, we observed it long to have been the rule here that determination of matters of support of minor children (and subsequent contempt proceedings) rests largely in the discretion of the trial court. We also stated in that case, 383 P.2d at 860–861, that the district judge's conclusions are quite persuasive where, as in the instant proceeding, the judge rendering the decision was the same judge who presided at the trial of the divorce case, entered the divorce decree, and approved the pertinent agreement.

In fine, although we accede to plaintiff's third point as to the interpretation of the contract in the children's best interests, we cannot agree with her that defendant failed to satisfy the burden of showing he lacked financial ability to pay his daughter's college expenses, and at the appellate level we cannot interject without supporting evidence independent views in that regard.

Affirmed.

McEWAN, Justice (dissenting).

The majority opinion fails to mention the uncontroverted evidence showed that Mr. Ferguson has a net worth of $204,000. It is inconceivable to me that a man with a net worth of $204,000 does not have the financial ability to provide $2,000 per year for a daughter to attend college.

We are not called upon to determine if a parent has the obligation to send a child to college because here the appellee agreed to provide financial assistance contingent upon his financial ability. Agreements between a husband and wife concerning the custody and welfare of children in the event of divorce are favored by the courts. Beard v. Beard, Wyo., 368 P.2d 953.

The appellant argued, and the appellee did not disagree, that in determining the appellee's "financial ability" the trial court should have considered not only the appellee's income but also his net worth.

According to defendant's financial statement submitted to a bank he had a net worth of $204,800. His principal asset was 41% of the stock in a family ranching corporation, which stock was valued at $195,000. The corporation owns 23,000 acres of land in Albany and Laramie counties and

has 1,500 acres of leased lands, and owns 1,421 head of cattle. The financial statement of the corporation lists the following assets and liabilities:

| Assets | | Liabilities | |
|---|---|---|---|
| 1,421 head of cattle | $242,950 | Encumbrance on livestock | $118,000 |
| Farm implements | 20,000 | Encumbrance on real estate | 130,000 |
| | | | 92,000 |
| 23,080 acres of land at $25 per acre | 577,000 | | 11,000 |
| | | Total Liability | $351,000 |
| | | Net Worth | 488,950 |
| Total Assets | $839,950 | Total | $839,950 |

The defendant was paid a nominal salary by the corporation, $4,450 in 1968, and lived on the ranch in a house provided by the corporation. He testified his banker would not lend him money to send Christine through college. The banker, called as a witness for the defendant, testified the defendant did not have enough collateral to justify a loan of $1,500 to $3,000. However, the banker testified the corporation could borrow 60% to 70% of the market value of cattle and 60% to 70% on the real estate. Even using the low figure of 60%, the cattle would support a loan of $145,770, and the land $346,200, which means that the corporation had additional borrowing power of $140,970. The banker also testified that he would lend the corporation more money.

In reference to the corporation's notes, the banker was asked, "Do Ferguson boys sign personally?", to which he replied, "Yes, first they borrow as a corporation and sign on the face of the note identifying themselves as officers and they have to endorse the notes on the back as individuals, which means in the event this corporation does not pay this note, these two individuals individually and collectively are responsible for the indebtedness of the corporation."

The accountant testified that, in recent years, the ranching operations had been separated and they were operating on three separate bank accounts, plus a corporation banking account; that each member of the family is operating a portion of the ranch; that they sign their own checks and make their own decisions as to what expenditures they are going to make; and that the defendant controls his own portion of the ranching operation.

The defendant did not argue or contend he could not borrow from or through the corporation sufficient monies to satisfy his agreed obligation to provide financial assistance for his daughter's college education. He perhaps impliedly argued that even though the corporation could borrow money this could not help him in the present situation. However, there is no doubt that he and his brother have control of the corporation, and that he alone has substantial control as evidenced by the fact he had to sign the notes of the corporation not only as an officer thereof but as an individual. It is also significant to note he had complete control of at least a portion of the operation of the ranch.

It is difficult for me to understand the banker's reasoning. He said the defendant, as an individual, could not borrow $1,500 to $3,000, yet the bank required the defendant to endorse the corporation's notes, as an individual, in the amount of $118,000. It appears inconsistent to have an individual endorse a note in this large amount if it is thought he did not have

sufficient collateral to secure a personal note of $1,500 to $3,000.

In any event, I merely say that in this case it appears that if the corporation could borrow money the defendant could borrow money. Mr. Justice Blume extensively discussed the alter ego question in State ex rel. Christensen v. Nugget Coal Co., 60 Wyo. 51, 144 P.2d 944 at 948–950, which subject is also covered by a note "Piercing the Corporate Veil" in 17 Wyo. L.J. 63.

Although neither of the parties argued this point I think it is significant to point out that in the agreement entered into between the parties hereto, which was made part of the divorce decree, it was stated:

"It is further mutually agreed that the financial security of the three children rather than of themselves is the primary concern of the parties hereto, and that the Husband shall make the following disposition of property for and on behalf of the children of the parties: * * *"

The agreement then provided that at the death of the defendant each of the children of the parties should receive a certain share of his "stock holdings" in the family corporation. The share which the children are to receive depends upon the defendant's marital status at the time of his death. It thus appears that the husband is, or at least at the time of the divorce was, concerned with the welfare of his daughter. As was stated in Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71 at 79:

"It will, indeed, be unfortunate if defendant finds it necessary to encumber or dispose of a part of his property in order to maintain his children. But it is better that they be properly maintained and educated during their tender years than be left an inheritance preserved at the expense of their present needs and comfort."

A reviewing court is reluctant to disturb a ruling of a lower court or in any way interfere with the sound exercise of discretion by trial courts. However, as Mr. Justice Parker said in Masek v. Ostlund, Wyo., 358 P.2d 100 at 104, an appellate court has the " * * * duty of analyzing the evidence in the light of reason and human experience, giving consideration to the motives and propensities which tend to influence or prompt human action, in an effort to solve the question of whether the judgment is reasonably and substantially sustained by the evidence."

I would reverse with instructions to the trial court to vacate its order dated September 18, 1969, dismissing the "Plaintiff's Order to Show Cause," and, pursuant to its order to show cause dated July 7, 1969, enter its order directing the plaintiff to provide sufficient financial assistance, in a sum not to exceed $2,000 per year, to Christine Ferguson to allow her to attend college, and to pay the sum of $711.88, which sum represents expenses incurred by said Christine Ferguson for the latter portion of the 1968–69 school year.