**Glenya HARRINGTON, Appellant (Plaintiff),**

v.

**Robert D. HARRINGTON, Appellee (Defendant).**

No. 5802.

Supreme Court of Wyoming.

March 11, 1983.

Mark J. White of White, Avery & Spurrier, Riverton, signed the brief on behalf of appellant.

L.B. Cozzens of Simpson, Kepler & Cozzens, Cody, signed the brief on behalf of appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice.

Glenya A. Harrington (appellant) petitioned the district court to modify the de-

cree of divorce to raise the amount of child support to be furnished under the decree by her former husband, Robert D. Harrington (appellee), for the changed circumstance that appellee's income had increased substantially since the divorce.[1] The district court refused modification. Appellant presents the following issues:

"1. Did the trial court err in excluding Appellee's 1979 Federal income tax return from evidence?

"2. Did the Appellant establish a material change in circumstances?

"3. Did the trial court abuse its discretion in denying Appellant's application for modification of decree?"

We will affirm.

On March 19, 1979, appellant filed for divorce from appellee alleging irreconcilable differences in their marital relationship. The couple had been married for over twelve years at the time and had three children. On March 11, 1980, the District Court of the Fifth Judicial District, Park County, Wyoming, entered a decree of absolute divorce ending their marriage. The divorce decree provided for a division of the property and for the custody and support of the couple's three minor children. Appellant was awarded custody of the children with visitation rights and specified support payments by appellee. In regard to support payments the decree provided:

"IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that defendant pay plaintiff $250.00 a month support for each child on or before the 10th of each month commencing February 1, 1980 and continuing monthly thereafter until the child attains majority or becomes self supporting, plus the percentage increase in the monthly payment for each child beginning each calendar year

---

1. Section 20-2-113, W.S.1977, provides the statutory authority for appellant's petition for modification. That section provides in pertinent part:

"(a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. The court shall consider the rela-

tive competency of both parents and no award of custody shall be made solely on the basis of gender of the parent. On the petition of either of the parents, the court may revise the decree concerning the care, custody and maintenance of the children as the circumstances of the parents and the benefit of the children requires."

commencing January 1, 1981 equal to the federal consumer price index increase for the preceding year. Only one half the amount of said support for each child shall be paid plaintiff when that child is visiting defendant for at least four weeks continuously.

"IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that defendant assist each child financially in college or university education or advance training in the event the child is interested in pursuing such course.

"IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that defendant keep all the children insured for hospital and medical insurance and pay medical, hospital, dental and optometry expense incurred by the children not covered by such insurance."

Since the divorce, appellee has met all his various child support obligations in a timely manner. By January 1, 1982, the escalator provision in the decree had increased appellee's basic support obligation, excluding insurance, medical payments, etc., from $750 per month to $918 per month. Appellant does not contend that appellee has ever failed to comply with the terms of the divorce decree.

Appellant's sole basis for seeking modification was the changed circumstance that appellee's income had increased substantially from when the divorce decree had been granted. On August 23, 1982, appellant's application for modification was tried. At the close of appellant's case, appellee's attorney moved for a directed verdict and no further evidence was presented. The trial judge ruled from the bench in favor of appellee and, in explanation, said:

"In this case, Mrs. Harrington [appellant], you are the moving party. It's your burden to prove to me Mr. Harrington [appellee] should pay more child support. Based on your cross examination by your attorney and your own testimony by Mr.

White, I come up with the following figures. * * *

"I come up with a total of fourteen thousand six hundred fifty-two dollars that you testified to as expenses. I took them down. Taking into consideration Mr. Harrington's nine hundred eighty-one dollar [sic, $918] payment, he is contributing towards the support of the children eleven thousand and sixteen dollars, which is seventy percent of your total expenses, and that necessarily has to include, because of that high percentage figure, contributions towards your living expenses as well, which he is not obligated to do. Therefore, you do not have the proper evidence for me to say Mr. Harrington is not paying his child support.

"I am not taking and have not taken into consideration in arriving at these figures the insurance, the allowances, the extra medical or incidentals. * * * * "[2]

In its final order denying modification the court found:

"1. Plaintiff [appellant] has failed to show a substantial change in circumstances that would justify an increase in the amount of child support payments being paid by the Defendant [appellee] * * *."

This appeal followed.

I

At the trial of this matter, appellant's attorney attempted to introduce into evidence a copy of appellant's and appellee's 1979 joint federal income tax return. Appellee's attorney objected, but the court indicated that it would receive the exhibit. This colloquy between the court and both attorneys occurred:

"Q. [By appellant's attorney, Mr. White] Mr. Harrington, I hand you what has been marked Plaintiff's exhibit number 1.

"A. Okay.

"MR. COZZENS [appellee's attorney]: Before he sees it, Your Honor, this ap-

---

**2.** The record discloses that appellee, in addition to the required support payments to the mother, in 1981 started giving each of the children $15.00 for pocket money. He also additionally paid for extra-curricular activities of the chil-dren, bought them recreational items such as ski equipment, motorcycles, bicycles, baseball equipment, magazine subscriptions, insurance on the motorcycle, and a computer for one son, along with various trips.

pears to be his and Mrs. Harrington's income tax return for 1979, joint income tax return. I will object to it on the grounds of relevancy inasmuch as the Decree entered March 11th, [sic] 1980, any statement of finances prior to that time is irrelevant to show a change in circumstances.

"THE COURT: Basically I agree with you.

"MR. WHITE: If I might make an offer of proof, this was the only income analysis that was available at the time the Decree was entered. It was relevant.

"THE COURT: On that basis and that basis alone, be received."

Thereafter, appellant's attorney, while examining appellee, elicited testimony of appellee's 1979 income and the amount of income entered on his and appellant's 1979 joint income tax return. The testimony established that in 1979 appellee had an income of approximately $40,000. Appellee also testified that in 1981, the last year before trial that his income was documented, he reported business income of $96,844, offset by farm losses of $68,794, for a total taxable income of $28,050. At the close of his direct examination of appellee, appellant's attorney then again moved for the admission of the 1979 tax return—plaintiff's exhibit 1—as well as two other tax return exhibits. The following exchange took place:

"MR. WHITE [appellant's attorney]: Like to offer Plaintiff's exhibit 1 and 2 and I guess Defendant's exhibit B.

"MR. COZZENS [appellee's attorney]: I have no objection to the 1980, '81 income tax return. Renew my objection on the other.

"THE COURT: Overrule the objection on one and sustain the objection on the other, 1 to be admitted."

Because of what appellant perceived to be confusion in the record as to whether the 1979 tax return was admitted into evidence or not, both parties have, pursuant to Rule 4.04, W.R.A.P.,[3] stipulated, in essence, that whether or not the 1979 tax return was itself admitted, its contents were revealed through appellee's testimony. Their stipulation, however, still leaves unanswered the question they raised as to whether or not the 1979 tax return—exhibit 1—was admitted. If, as appellant claims, the record is confusing on that point, the record remains confusing after her attempt to clear up the matter. Before going further, we must then determine what the record reveals. We find that the record reveals that appellant's exhibit 1—appellee's 1979 joint income tax return—was received by the district court; thus, there is no issue presented for us to decide.

█ Before going on, though, we note that appellant's first argument is mere sophistry in that whether or not the 1979 tax return was properly received or rejected by the district court, its relevant contents were fully revealed in appellee's testimony which was before the district court and appellant acknowledged as much in the aforementioned stipulation. In a judge-tried case, "a ruling erroneously excluding evidence is ordinarily considered harmless if other evidence has been allowed on the same point, on the theory that the evidence erroneously excluded would have been merely cumulative." 1 Louisell & Mueller, Federal Evidence § 20 at pp. 111–112 (1977).

## II

We now reach appellant's second and third issues on appeal. Before discussing those issues, it is appropriate that we set

---

3. Rule 4.04, W.R.A.P., provides:

"If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to .and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the Supreme Court, or the Supreme Court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the Supreme Court by motion."

out the law that guides us in these matters. In *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981), a case strikingly similar to the one before us in which a former wife sought increased child support, we summarized this court's views on modification of divorce decrees as follows:

"We will first turn our attention to the question of when may a district court raise monthly child support payments. The law in Wyoming is clear that, as a general rule, a divorce decree is res judicata on all issues therein decided. [Citation.] This doctrine is mandated by public necessity; there must be an end to litigation at some point, or else the legal system would become so bogged down that nothing would ever remain decided. [Citation.]

"Nevertheless, this court has recognized that, in certain circumstances, modifications of divorce decrees are necessary. In order for a modification to be warranted, it must be established that there has been a material or substantial change in circumstances which outweighs society's interest in applying the doctrine of res judicata. [Citation.] The burden of proof lies with the party seeking the modification. [Citation.]

"When the modification sought involves the question of custody of the child, that child's welfare must be given paramount consideration. [Citation.] However, it is imprudent to contend that, when the question involves support payments, the matter should be decided without consideration of the paying parent's ability to pay, the recipient's spending habits, and all other surrounding circumstances. [Citations.] This court in *Redman* [*v. Redman*, Wyo., 521 P.2d 584 (1974)] agreed with the proposition that a child support order may not accurately reflect what children actually require but, rather, what the parent can reasonably be expected to pay. The circumstances of the parents are recognized by our controlling statute as well. Even in unbroken homes a child's monetary needs must be limited by the parents' income. Child support cannot be determined in a vacuum. If a child's wants and needs were to be the sole criterion, then child support may have to fall upon the state since few parents are able to raise their children without having to make do with what they have.

\* \* \* \* \* \*

"It is clear that the income of the parents can and should be taken into consideration in determining whether there has been a change in circumstances which warrants a modification of the divorce decree." 638 P.2d at 158–159.

When reviewing a district court's decision on matters relating to child support, we employ an abuse-of-discretion standard. This court has long held that decisions regarding child support rest largely within the discretion of the district court, and its decision in that regard will not be disturbed except for grave abuse of that discretion or violation of some legal principle. *Rose v. Rose*, Wyo. 576 P.2d 458 (1978); *Chorney v. Chorney*, Wyo., 383 P.2d 859 (1963).

With that recitation of the law in mind, we reach the question of whether appellant established a material or substantial change in circumstances and, if she did so, whether it was an abuse of discretion for the district court to refuse to modify the decree. Appellant's entire case was built around the notion that because appellee's annual income had increased from approximately $40,000 in 1979 to nearly $97,000 in 1981—excluding allowable losses—she was entitled to a modification of the divorce decree. Appellant argues now that proof of appellee's increased income was sufficient to show substantial change in circumstances justifying modification. Throughout all of the cases in which this court has dealt with modification of divorce decrees as related to child support, the welfare and needs of the child are very important considerations together with the parent's ability to pay. *Mentock v. Mentock*, supra. The needs of the children, and not the standard of living desired by the custodial parent, are at issue. *Owen v. Owen*, Utah, 579 P.2d 911 (1978).

In this case the district court found from appellant's testimony that appellee's basic support payments of $918 per month contributed $11,016 per year to appellant's expenses. The court also found from appellant's testimony that her annual expenses totaled $14,652 per year.[4] Those findings indicate that appellee contributed 75% of appellant's total annual expenses for herself and the children. The district court did not reach, nor do we, the question of which income figure more closely reflects appellee's 1981 income. We note, however, that it is likely that some account must be taken of appellee's allowable farm losses in reaching a true income figure for him.

 In dealing with the amount contributed in child support, we remind the parties that both parents have a responsibility for the support of their children. *Grosz v. Grosz,* Wyo., 506 P.2d 46 (1973). We take note also of the fact that appellant had a demonstrated earning ability in that she had been continuously employed as an office worker and later an office manager since the time of the divorce. She was earning $1,000 per month prior to resigning her position just before trial and she expected to soon be employed in a better position. Where a mother is shown to have a demonstrated ability to produce an adequate income, she too has a duty of providing for her minor children. *Woodward v. Woodward,* Wyo., 428 P.2d 389 (1967). Here appellant failed to show a need for increased child support; she merely showed a desire to share in appellee's good fortune, if indeed the latter was the case. It is significant that the original divorce decree had an escalator provision which caused appellee's support obligation to increase with the changing economy. See *Mentock v. Mentock,* supra, 638 P.2d at 160, fn. 3. In accord with the Utah Supreme Court's view in *Owen v. Owen,* supra, appellee should not automatically be penalized for using his ability to increase his income when no other change in circumstances is shown. We

agree with the trial judge and hold that appellant failed to meet her burden of proving a material or substantial change of circumstances which would warrant her requested relief.

Finality is an especially important concept in divorce proceedings where the emotional involvement of the parties tends to, in their eyes, magnify out of proportion the importance of all matters in connection therewith. *Heyl v. Heyl,* Wyo., 518 P.2d 28 (1974). In this instance appellant has failed to demonstrate a material or substantial change of circumstances which would warrant the finality of the divorce decree provisions for support to be disturbed. In the absence of a material or substantial change of circumstances, the district court quite properly refused to modify the divorce decree as requested by appellant.

Affirmed.

---

4. The expenses included mortgage payment on a new tri-level home in Laramie, clothing expenses, utilities, car payment, car insurance for two cars, gasoline and automobile upkeep, food expense, etc. Many of the expense costs were appellant's undocumented estimates.