Shirley SECREST, Appellant (Plaintiff),

v.

Robert SECREST, Appellee (Defendant).

No. 89-55.

Supreme Court of Wyoming.

Oct. 27, 1989.

Shirley Secrest, pro se.

Kathleen Audette Rideout, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Shirley Secrest appeals from a judgment which ordered appellee Robert Secrest to pay child support arrearages, medical and travel expenses incurred for their daughter, and attorney's fees.

We affirm.

Appellant raises the following issues for our review:

I. Did the District Court err when it reduced the accrued child support arrearages retroactively?

II. Did the District Court err when it failed to find Appellee in contempt for failure to maintain the health insurance policy or, in the alternative, provide the necessary funding to continue the medical treatment?

III. Did the District Court err when it assessed the Appellant one-half of the travel expenses for Sally Secrest's medical travel?

IV. Did the District Court err and abuse its discretion when it failed to apply sanctions upon Appellee for his contempt?

V. Did the District Court err when it failed to find Appellee in violation of the Decree of Divorce and compel him to maintain the life/savings policy and its cash value?

VI. Did the District Court err and abuse its discretion and further display bias and prejudice towards Appellant in

its rulings, denying immediate payments of back child support, partial award of medical travel expenses, partial award of attorney fees and denial of enforcement of prior orders and decrees, based on Appellee's alleged inability to pay?

Appellant (the mother) and appellee (the father) were divorced on August 1, 1986. The decree of divorce awarded custody of their daughter, Sally, to the mother and ordered the father to pay $300 per month child support to the mother through the clerk of the district court. In addition, the decree ordered the father to provide life and health insurance for Sally and to pay one-half of the medical expenses not covered by insurance.

On May 29, 1987, the mother was served with the father's motion for an order to show cause, two affidavits, and the court's order to show cause why, among other things, the father should not pay child support to the party having custody of Sally in the event she was not in the care, custody, and control of the mother. On June 18, 1987, the mother filed a motion for an order to show cause why the father should not comply with that part of the decree of divorce pertaining to insurance and child support. On August 25, 1987, the court entered its order after hearing the evidence on the show cause orders at a hearing held June 22, 1987. Although the order directed the father to make semi-monthly child support payments to the clerk of the district court in the amount of $150 each, the court did not address whether the payments should go to the party who had the actual care, custody, and control of Sally.

On September 23, 1988, the mother again moved the court for an order directing the father to appear before the court to show cause why he should not be held in contempt and jailed for his failure to pay child support and medical bills and his failure to maintain health insurance as previously ordered by the court. The mother also prayed that the amounts the father owed her be reduced to judgment and that she be awarded a reasonable amount for her attorney's fees. The court again ordered the father to appear and show cause why he should not be jailed for contempt and why the mother should not receive the other relief prayed for in her motion.

The evidence produced at the show cause hearing held on January 12, 1989, with conflicts properly resolved in favor of the father, revealed the following facts. On the date of the parties' divorce, the father, an insurance salesman, maintained a Wisconsin National Life Insurance Company policy for Sally's health care expenses by selling insurance for that company. The policy lapsed on January 31, 1987, because the father's sales fell below the quota required to preserve the coverage. The mother could have extended the coverage by submitting a certain amount of claims every ninety days, but the father did not notify her of this constraint on the continuing coverage. Although the father subsequently obtained medical insurance for Sally, the insurance did not cover Sally's preexisting dental problem, and the mother had to pay $2,208.59 for such treatment. The mother expended an additional $2,700 for transporting Sally to Denver for medical treatment. That expense included the cost of trips between Denver and Sheridan during the periods of time Sally was residing in the Wyoming Girls' School at Sheridan, Wyoming. She was committed to the Wyoming Girls' School for a total of approximately nine months between August 1987 and December 16, 1988. The evidence also revealed that the father's income since the divorce steadily declined and that he has been unable to fully comply with the payment provisions of the decree and subsequent orders of the court due to lack of money.

The district court found: (1) the father was in contempt of court for failing to make child support payments, resulting in arrearages of $900; (2) the mother was not entitled to receive child support payments for the periods of time Sally was living at the Wyoming Girls' School, as Sally was then in the custody of the Board of Charities and Reform; (3) the father should pay for Sally's medical and dental expenses not covered by the lapsed insurance policy he was ordered to maintain but that the failure to maintain such insurance policy was

not willful or intentional and did not constitute contempt; (4) the father was liable for one-half of the medical travel expenses; and (5) because of the father's financial condition, he should be responsible for only $500 of the mother's attorney's fees. The court entered judgment in favor of the mother in accordance with the findings and decreed that the father could purge himself of contempt by paying the $900 for back child support within a reasonable time. This appeal is from that judgment.

## Child Support

The mother contends that the court erred as a matter of law when it reduced Sally's child support retroactively and directs our attention to Wyo.Stat. § 20–2–113(a) (1977), which provides in pertinent part:

An order for child support is not subject to retroactive modification except:

\* \* \* \* \* \*

(ii) The order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was given \* \* \*.

■ Even assuming arguendo that the court reduced the child support arrearages,[1] we hold that, in view of the above-quoted exception, the court did not err. The mother was given notice of the father's pending petition, which was couched in the form of a motion seeking to have child support paid to the party having custody of Sally, before Sally was committed to the Wyoming Girls' School,[2] and the January 1989 order did not modify the child support provisions prior to that notification.

## Abuse of Discretion

The mother's remaining issues, with the exception of her fifth issue, concern whether the court abused its discretion by not finding the father in contempt or by not

awarding the mother judgment for the amounts she prayed for in her petition.

We stated in *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986), that judicial discretion is

a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

We have also held that a court abuses its discretion when "it acts in a manner which exceeds the bounds of reason under the circumstances." *Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980).

The mother has not directed us to anything in the record which indicates that the court abused its discretion. Our examination of the record shows that the father's failure to reimburse the mother for the cost of medical treatment and travel not covered by insurance was not a willful act but was due to the father's financial condition which continued to deteriorate from the date of the divorce to the point where he has only enough money to live on. On cross-examination of the father, the following colloquy took place:

Q. Just a couple of brief questions. Mr. Secrest, when you didn't pay child support for Sally Secrest, why was that?

A. Because I was informed that she was in Sheridan and not to pay, and also I was broke.

Q. Can you tell us about your finances from the time of the divorce?

A. Bad, real bad.

Q. Are you making the same amount of money that you were at the time of the divorce?

A. No, ma'am.

Q. For the Court's information, if you recall, how much money did you make in 1985?

1. The transcript contains statements that, at a November 10, 1988, hearing, the district court ordered the father to make his child support payments to the Board of Charities and Reform for the period Sally was at the Wyoming Girls' School. We find nothing in the record to verify the court's decision before January 12, 1989.

2. Sally entered the Wyoming Girls' School during the month of August 1987 and was released October 23, 1987. She again entered the Wyoming Girls' School May 26, 1988, and was released December 16, 1988—a total period of approximately nine months.

A. I don't know, probably about 40,-000 or 50,000. I don't remember.

Q. Do you recall how much money you made in 1986?

A. I just know that it has been going steadily downhill.

Q. There was an allegation in the request for the show cause that you had not maintained a life insurance policy on Sally.

A. Yes[,] ma'am.

Q. Is that factual?

A. I tried to write a policy on Sally a couple of years ago but at one time I was unable to maintain that and I would have to come up with all the back premiums, and I wanted to start a new policy. It would have worked out that she would have had to cash in the policy and Mrs. Secrest did not want it. She wanted me to get the original one.

Up to this point, I have not had the money. I'm trying to survive.

Q. Are you willfully disobeying the Court's Order to get a life insurance policy?

A. No[,] ma'am.

Q. You were ordered to maintain health and accident insurance on Sally Secrest. Have you done that?

A. Yes[,] ma'am.

Q. Has she ever been not covered?

A. Not to my knowledge.

Q. When the Wisconsin National Life plan was terminated, did you have anything to do with terminating that?

A. No. I tried like the devil. That is why I had the letter to keep the coverage that I had, because—

Q. Was the termination willful on your part?

A. No[,] ma'am.

Q. Did you obtain other insurance?

A. Yes[,] ma'am.

Q. Concerning the hearing that was scheduled on November 10, were you willfully disobeying the Court's Order when you did not appear?

A. No[,] ma'am, I wasn't. I moved so darn many times. I'm trying to get started. I was booked solid for appointments. I had no money. I was booked for Thursday and Friday. As I said earlier to Mr. Marken, a fellow I had been trying to raise money from happened to be back in town and I got some money Thursday afternoon. The people I was supposed to see on Friday called and cancelled until the first of the year, so that is why I came up. I didn't come—I knew I could come up—At one time I planned to come to the Court hearing. I came up here. I did not come up here for Thanksgiving. It was just a one-time trip.

Q. Have you attempted to maintain compliance with the Court Orders?

A. Yes[,] ma'am[.]

■ After examining and considering the record, particularly the unrefuted evidence that the father was financially unable to comply with the court's previous orders, we hold that the court did not abuse its discretion, or display any bias or prejudice, by not finding the father in contempt and by not ordering him to pay the full amount of the mother's attorney's fees and Sally's medical and travel expenses.

### Life/Savings Policy

■ The record reveals that the mother did not seek relief in her motion to show cause for the father's failure to maintain a life/savings insurance policy, and the court did not grant her any. The mother contends that "this Court should remand this matter to the District Court with directions to compel Appellee, under sanctions, to comply." If the father has not complied with a previous court order, it is the responsibility of the mother to bring it to the attention of the court and pray for relief and sanctions. The mother has failed to present a cogent argument or cite any authority to convince us that we should remand in this instance. We have previously stated in various ways that we will not consider issues on appeal unless we are

presented with a cogent argument and authority. *Daulton v. Daulton,* 774 P.2d 635 (Wyo.1989); *Edwards v. Edwards,* 732 P.2d 1068 (Wyo.1987). We continue to decline to do so.

Affirmed.