**James Stephen ROWAN,**
**Appellant (Plaintiff),**

**v.**

**Tammy Beth ROWAN, Appellee**
**(Defendant).**

**No. 89–73.**

Supreme Court of Wyoming.

Feb. 8, 1990.

Ronald G. Pretty, Cheyenne, for appellant.

Rhonda Sigrist Woodard, Hanes, Burke & Woodard, P.C., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The primary question to be resolved in this case is whether it was an abuse of discretion for the trial court to award initial child support of $200 per month for each of two minor children, which amount was to be increased to $250 per month after three months and to $300 per month two months later, in light of the decision of the father to return to college to train for a career different from the one he had been pursuing immediately prior to the divorce. Additional questions are presented with respect to whether the trial court committed an abuse of discretion in refusing to receive into evidence a diary kept by the father; in terminating the appointment of a guardian ad litem; and in defining the visitation rights for the father. The father urged that the amount of child support should have been determined by the amount of his earnings while he was pursuing his education for a different career; the appointment of a guardian ad litem should have been continued even though the children were residing in another state and no meaningful communication was occurring between them and the guardian ad litem; the court should have permitted the intro- duction into evidence of a diary the father kept during his visitation periods that incorporated comments by the children; and the court erred in apparently preferring the interests of the children over those of the noncustodial parent in setting visitation privileges. We find no abuse of discretion in the Judgment and Decree entered by the trial court, and it is affirmed.

In his statement of the issues, the father sets out these propositions:

"I. Did the court err by its refusal to allow the children their own input into the divorce. Should the court have terminated the employment of the Guardian–Ad–Litem such as to deny the children their due process right and was the court in error for not allowing the visitation diary of the plaintiff to be introduced such as to allow the court some input as to the children's feelings.

"II. In the determination of visitation rights for the noncustodial parent: Should the court give preference to the interests of the children or of the noncustodial parent.

"III. Was the child support level set by the court unequitable and too high given the Appellant's income at the present time. Should the court have set the child support level at the Appellant's income that he had prior to being terminated from his employment or at his present income."

In her brief, as appellee, the mother states these to be the issues:

"I. Whether the trial court abused its discretion in finding that a guardian ad litem was not necessary in order to protect the best interests of the minor children of the parties in this case.

"II. Whether the visitation schedule ordered by the district court was within its discretion.

"III. Whether the trial court abused its discretion by ordering appellant to pay the child support set forth in the judgment and decree.

"IV. Whether appellant should be ordered to pay damages and attorney's fees for filing an appeal without reasonable cause for appeal."

This divorce action was filed on October 19, 1987. It had its actual inception when the wife left the marital home, taking the children with her. The principal focus of the conflict was over who would have custody of the children, the mother or the father. While the case was pending, the father was allowed to have the children for a period of visitation. When the visit occurred, he assumed custody of the children and moved in with his parents who had frequently cared for the children while both the mother and father worked. Eventually, the district court placed temporary custody of the children with the mother pending the entry of the final decree of divorce.

On March 9, 1988, pursuant to stipulation of the parties, a guardian ad litem was appointed to represent the children. Although the record is not entirely clear as to why a guardian ad litem was appointed, we understand that the husband sought the appointment of, and was willing to pay for, the services of the guardian ad litem because he wanted the children to have some input into whether their custody should be placed with the mother or the father. We note that the children were three years old and eight months old at the time the divorce was commenced. The record does not demonstrate what contribution, if any, the guardian ad litem made in these proceedings, but it does show he requested to be relieved of his duties. His request was granted on June 14, 1988.

◼ We first address the issue relating to the award of child support payments from the father to the mother. The pertinent provisions of the decree are:

"[THE COURT] FINDS as follows:

"4. [Father] has a duty to provide toward the support of the minor children. [Father] has a bachelor's degree and master's degree in business administration and management, and is reasonably capable of providing toward the children's support in an amount which begins at $200 per month per child and increases to $300 per month per child on May 1, 1989;

"5. Although [father] was terminated from his employment in July, 1988, his unemployment from July, 1988, until shortly before November 8, 1988, was due to his choice not to seek employment. [Father's] current level of employment is due to his choosing to work part-time and pursue a Ph.D. rather than seek a job for which he is presently qualified;

\* \* \* \* \* \*

"WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED;

"4. Commencing December 1, 1988, and continuing on the first day of each month thereafter, the [father] shall pay to [mother] through the Clerk of the Court of Laramie County District Court in Cheyenne, Wyoming, the sum of Two Hundred Dollars ($200) per month per child for the support of [daughter] and [son] until March 1, 1989, at which time he shall pay the sum of Two Hundred Fifty Dollars ($250) per month per child on the first day of each month until May 1, 1989, when said payments shall become Three Hundred Dollars ($300) per month per child and shall continue on the first day of each month thereafter until the children reach the age of nineteen years or become emancipated."

The father urges that the amount of child support should have been determined by the amount of his earnings while he was pursuing his education to prepare and qualify him for a different career. He contends, as he did in the trial court, that he was unable to make such support payments because of his low earnings at the time the divorce was granted and because of his decision to return to college to train for a different career than the one he had been pursuing immediately prior to the divorce. He vigorously asserts that the district court abused its discretion in making its determination concerning child support payments.

The decision of the district court to set child support at $300 per month per child was clearly within its discretion. We have held previously that voluntary assumption of obligations which interfere with a parent's ability to pay child support will not

sustain a petition to have the child support obligation changed. See *Booker v. Booker*, 626 P.2d 561 (Wyo.1981); *Nuspl v. Nuspl*, 717 P.2d 341 (Wyo.1986). The district court's decision to set child support at a level consistent with the father's earning capacity, rather than with his desire not to work full-time and, instead, pursue a new career goal, is not an abuse of discretion. As we noted in *Nuspl*, ascertainment of the compromise between the obligations of a parent to pay child support, and the voluntary assumption of obligations by that parent which interfere with the former obligation, rests in the sound discretion of the trial court after its consideration of all the proper and relevant circumstances. Here, the district court took into account all relevant and proper circumstances, and we perceive no abuse of discretion.

The father's concern is that he is charged with making child support payments that áre excessive in light of his income while attending college to qualify him for an alternative career. In this proceeding, the issue is the propriety of the amount, not the collectibility, of the child support payments. As we have noted, the father chose to pursue a different career rather than continue the employment for which he already was qualified. In light of the facts and circumstances, there is no abuse of discretion, or even unfairness, in providing for an adequate amount for child support.

▮▮▮ The principal focus of appellant's issue relating to the guardian ad litem is the district court's decision to discontinue the use of the guardian ad litem to represent the children's interests in this divorce. The father urged that the appointment should have been continued even though the children were residing in another state and no meaningful communication was occurring between them and the guardian ad litem. Appellant noted in his brief that sixteen states allow, or require, the appointment of a guardian ad litem in child custody matters, although he cited no statutes. No such requirement exists under Wyoming law and, to the extent that the guardian ad litem served any function in

this case, it was merely as a convenience to the district court. More important to our disposition of this issue, however, the record demonstrates that appellant made no concrete objection in the district court to the withdrawal of the guardian ad litem. In fact, none of these issues, which appellant has so superficially called to our attention in this appeal, were called to the attention of the district court at all. Hence, we apply our usual rule that an issue raised for the first time on appeal will not be considered by this court absent special circumstances. *Blanchard v. Blanchard*, 770 P.2d 227 (Wyo.1989). No such special circumstances are present here.

▮▮▮ Coupled with the guardian ad litem issue, the father pursued, as a related issue, the trial court's refusal to admit as evidence a diary that he had kept in which he had chronicled the time he spent with his children, their activities together, and concerns the children expressed to him about the behavior they observed in the mother's home. The father argued that the court should have permitted the diary to be introduced into evidence. Although the admissibility of this diary, which appears to be filled primarily with self-serving observations by the father, is very doubtful, we choose to rely on a more fundamental rule concerning admissibility of evidence which obviates the need to determine whether the diary was, or was not, admissible. In a case tried to the court, a ruling erroneously excluding evidence is ordinarily considered harmless if other evidence has been allowed on the same point, the theory being that the evidence erroneously excluded would have been merely cumulative. *Harrington v. Harrington*, 660 P.2d 356 (Wyo.1983) (quoting, 1 D. Louisell & C. Mueller, *Federal Evidence* § 20 at 111–12 (1977)). An abundance of evidence was presented on the custody issue from both parents, friends, relatives, and mental health professionals. Admission of the diary, even if it could somehow have been considered properly admissible, would have been mere surplusage, and the refusal of its admission was harmless under these circumstances.

■ In support of his second issue, the father argues that the district court abused its discretion in implementing a visitation schedule which made it virtually impossible for the father to visit his children, and that the court erred in apparently preferring the interests of the children over those of the non-custodial parent in establishing visitation privileges. This argument is directly opposed to the language of Section 20–2–113, W.S.1977 (June 1987 Repl.), which states, in pertinent part:

"(a) In granting a divorce * * *, the court may make such disposition of the children *as appears most expedient and beneficial for the well-being of the children.*" (Emphasis added.)

The definition of rights of visitation is an aspect of the determination of custody, and it has been our consistent principle that in custody matters the welfare and needs of the children are to be given paramount consideration. E.g., *Fanning v. Fanning,* 717 P.2d 346 (Wyo.1986); *Bereman v. Bereman,* 645 P.2d 1155 (Wyo.1982); *Leitner v. Lonabaugh,* 402 P.2d 713 (Wyo. 1965). The decision of the trial court with respect to such matters will not be disturbed by this court unless we can identify a clear abuse of discretion. *Bereman; Gill v. Gill,* 363 P.2d 86 (Wyo.1961); *Stirrett v. Stirrett,* 35 Wyo. 206, 248 P. 1 (1926).

■ The record shows that when the divorce decree was entered, the mother had moved to Las Vegas, Nevada, where she had found suitable employment, and the father had moved to Greeley, Colorado, where he was pursuing an advanced degree in psychology. The father essentially argues that the visitation order generally used by the district court should have been implemented rather than the one that was used. We note, at the outset, that the visitation provisions usually found in divorce decrees involve parents who still live within the same geographic area, if not within the same community. Clearly, this case does not fit the usual pattern. The visitation schedule established by the district court provided:

"[The father] shall have one 11 day visitation period at his residence, counting traveling to and from same, in the months of September, November, March and May in the even numbered years. During the odd-numbered years, commencing in 1989, he shall have one 11 day visitation period at his residence, counting traveling to and from same, in the months of October, December, April and June. It is contemplated that November and December visitations shall encompass Thanksgiving and Christmas. During November and December, the children shall be returned to [the mother's] residence on the day before the last day of the month. During the other months, visitation shall commence on the fifth (5th) day of the month and shall terminate on the fifteenth (15th) day of the month. Visitation shall begin no earlier than 9:00 a.m. and terminate not later than 5:00 p.m., local time of the residence of [mother], and all shall be at [father's] regular place of abode.

"During those months that [the father] does not have regular 11 day visitations he shall be entitled to a weekend visitation with the children, commencing at 9:00 a.m. Saturday morning and terminating at 5:00 p.m. Sunday evening. During the weekend visits, the children shall remain within ten miles of [the mother's] residence.

"[The father] shall be responsible for all expenses incident to initiation and termination of visitation periods. No such visitation shall interfere with the programmed educational training of the children. [The father] shall keep [the mother] notified of where the children can be reached during all weekend visitations and any planned deviation from his regular place of abode during the 11 day visitation. When the older child reaches school age, this visitation will be modified so as not to interfere with regular school activities."

The record reflects, and the parties do not dispute, that this visitation schedule was implemented, at least in part, based on testimony of a psychologist who testified concerning a young child's need, especially during the formative years, to be with the

parent with whom the child has most closely bonded and not to be absented from that parent for periods of time much longer than ten days. The district judge acknowledged this need in his decision letter. We have held that the establishment of visitation schedules is within the sound discretion of the trial court, and such determinations will be upheld absent a clear abuse of discretion. In *Henson v. Henson,* 384 P.2d 721, 723 (Wyo.1963), we noted that:

> "Courts, though they be possessed of the reputed wisdom of Solomon, are conscious of their human fallibility, and the law recognizes that man is without that fore-vision which ensures that his judgment of today will, in light of unforeseen new conditions, prove to be adequate or even proper tomorrow."

We conclude upon review of this record, that the visitation schedule established by the district court was within its sound discretion and was, perhaps, a device approaching Solomon's wisdom in resolving the bitter dispute that arose between these parents. We can only hope that the parents are better able, and more willing, to consider the children's best interests since time and circumstances will no doubt necessitate future alterations to the visitation schedule imposed at the time of the divorce decree. The briefs reveal that the father has not taken advantage of the visitation schedule, and has not seen his children, since November of 1988 because of the difficulties it imposed upon him. That is purely a matter of choice on his part. It is our perception that the schedule is fair and reasonable considering the ages of the children. In summary, we find no abuse of discretion in the visitation schedule imposed by the district court.

The mother, as appellee, asks that we certify that there was no reasonable cause for this appeal pursuant to Rule 10.05, W.R.A.P. We have carefully and thoughtfully considered this request and decline to make the certification. Appellee shall recover the other costs provided for in Rule 10.05.

The Judgment and Decree of the district court is affirmed.