Kenneth Lee **MOREHEAD**,
Appellant (Defendant),

v.

Sharon Mae **MOREHEAD**,
Appellee (Plaintiff).

No. 91–10.

Supreme Court of Wyoming.

May 21, 1991.

Micheal K. Shoumaker, Sheridan, for appellant.

Fred R. Dollison, Sheridan, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

We face the contemporary problem of American divorce law in this case and conclude that no greater all-resolving monetary solution is available to us than what was considered and accepted by the trial judge.

Consequently, we affirm.

The issue presented is trial court divorce decree assessment constituting contended abuse of discretion by exceeding child support guidelines where ability to pay may not be demonstrated for the amount provided both for support and other monetary charges. Directly involved is medical insurance. W.S. 20–6–401.

The current mode of child support guidelines, whether enacted with legislative wisdom or adopted by judicial experience, neither creates money that does not exist nor cooperation in joint resolution by the parties that does not occur. We cannot escape the first three sentences of the father's appellate brief where, in argument, it is stated:

> This is a case involving two poor people. If the only criteria was the best interest of the children then 100 percent of their combined incomes would not be adequate to support them. The law has never adopted the position that the best interest of the child is established without the restricting factor of the parents' ability to pay *Harrington vs. Harrington*, 660 P2d 356, 360 (Wyo.1983), *Manners vs. Manners*, 706 P2d 671, 675 (Wyo.1985), *Redman vs. Redman*, 521 P2d 584, 587 (Wyo.1974).

If two lessons are to be acquired from this appeal, it is first that support guidelines are guides, not inflexible determinates. Second, any order directing acquisition of medical insurance may be simply wishful thinking in this present society where an ever-increasing percentage of the American population cannot afford and do not have any medical insurance protection to protect against catastrophe or normal illness cost requirements.

After the contested divorce trial, the father was ordered to pay "not less than 25% of his net monthly income", but in no event "less than $250.00 per month" for the support of his two small children. Furthermore, payments were directed of certain overdue family obligations, his wife's attorney fees and more significantly that he obtain, pay for and continue to provide health insurance for the minor children to consist of at least eighty percent coverage for all major medical costs and a deductible of not more than $500. The deductible expense incurred was to be divided equally between father and mother. The divorce decree then directed "that the Defendant must obtain medical insurance as referenced herein and provide notice of the same to the Court within ten days of the date of this hearing or the Defendant will be held in contempt of this Court[.]"

Kenneth Lee Morehead is a disabled railroad worker who works for his mother in a trophy shop in Colorado Springs, Colorado. Sharon Mae Morehead is on AFDC benefits and apparently unemployed at the time of trial. The texture of the dispute between the litigants was apparently adversely influenced for judicial review when the father denied parentage of the younger child supposedly at the "direction" of the father's mother, the children's paternal grandmother.

The established income for the father as a clerk in the family trophy shop was $800 gross per month or a net weekly income of $168.50. The twenty-five percent ratio ordered by the trial court for child support would provide $168.52 per month. This is $81.48 per month less than the minimum $250 ordered by the trial court. Income was in some dispute by a character of evidence suggesting that the father worked overtime and should have been paid in addition without recognition of any alternative or additional income received. The father's 1989 tax return showed a gross income of $10,075, or an average of $840 per month, which is slightly higher than the amount which he stated in testimony. His 1988 tax return included a gross income of $6,763.

The divorce decree was entered November 29, 1990 and appeal taken December 6, 1990. A petition for an order to show cause was filed by the mother on December 27, 1990, addressing the father's failure to provide medical insurance and apparently also nonpayment of child support. An order to show cause was entered on December 27 and a hearing was scheduled for January 9, 1991. On January 11, 1991, the trial court entered a bench warrant for the arrest of the father for his failure to appear pursuant to the order to show cause dated December 27, 1990. To further illuminate the case, it appears that an informal arrangement was made for the father to commence making child support payments shortly after the divorce complaint was filed and a motion for interim support presented. However, one would realistically come to understand from the record that through the scheduled date for the order to show cause hearing in January 1991, no support had yet been paid and probably none provided in the year prior to divorce filing.

Realistically, this court cannot find the differential of $81.48 to be the real problem presented. The problem is the cost of health insurance where cost and availability are not established. The cost might be less than $150 per month or as high as $300 per month at contemporary rates if a group policy of some kind is not available to the father through his mother's Colorado Springs business. *Cf.* Sellers, *Providing Health Insurance to Divorced or Separated Spouses,* 18 ABA Barrister 48 (Spring 1991). We do recognize the alleged irony in the argument of the father that the medical insurance benefit which he had been ordered to pay would be less than what public assistance already provides the unemployed mother and the two small children. The outstanding family debts of the deficiency on the house trailer and the unpaid credit card accounts provide further "challenges" to justice and reasonable possibility for payment.

This appeal does not present the post-decree questions of the validity of the order to show cause, non-appearance and issued warrant, nor are we called here to evaluate the possibility of extradition in the event that the father chooses not to make himself available in the Wyoming forum. The difficulty to be perceived is while the controversy is centered on the insurance issue, no child support payments are being made either. The questions will be answered as presented with some simplicity and sure and certain knowledge that nothing we determine will resolve the insufficiency of income constituting a basic fact of this support controversy.

 In first resolution, we discern that child support guidelines are neither absolute nor magical. They are guidelines as a rebuttable presumption creating a goal upon which court discretion remains emplaced for deviation. W.S. 20–6–302; *Olson v. Olson,* 445 N.W.2d 1 (N.D.1989).[1]

---

1. The trial court specifically followed the percentage factor in present statute effective July 1, 1990, but then set the minimum higher when computed on twenty-five percent of the proved income. We do not ignore the provisions of W.S. 20–6–302(b) recognized in the father's brief, which provides in part:

> A court may deviate from the child support guidelines established by W.S. 20–6–304 if it issues a *written finding or specific finding on the record* that the application of the guidelines would be unjust or inappropriate in a particular case.

(Emphasis added.) For the facts of this case and within the circumstances presented, we find

Additionally, in this case, there is some evidence that the trial court was entitled to accept a possibly higher income than the amount of the normal weekly checks which were placed in evidence. The trial court apparently believed that the income was minimized for support duty evaluation in consideration of overtime benefits which might have been payable in absence of litigation. We do not find the disputed differential in amount as a variance from the guidelines sufficient to establish an abuse of discretion in the decision making responsibility of the trial court. Obviously, today, two young children cannot be supported and raised adequately on $250 per month.

We answer the additional questions to recognize priorities. Joint creditors are not going to collect from the mother and with exercise of collection pressure, bankruptcy will probably answer the obligation as a civil debt for the father. No one seems to dispute that the father took his disability benefit settlement to reduce the debts to the present level and retained nothing further as cash assets.

■ The striking problem is medical insurance. We affirm the obligation for the father if it can be acquired within the reasonable allocation of resources that he has, e.g., probably a group policy at his mother's business. If he cannot (and this record thus far clearly fails to reveal capability), he would be entitled to defend any contempt proceeding on the basis of reasonable efforts to obtain and to maintain insurance. Obviously, it would not make sense for the father to acquire insurance at $200 or $300 per month and fail to make the support payment for which he would then remain obligated and subject to contempt enforcement. *Connors v. Connors*, 769 P.2d 336 (Wyo.1989); *Salmeri v. Salmeri*, 554 P.2d 1244 (Wyo.1976).

minimum compliance rendering remand unnecessary. This resolution does not minimize the careful attention that should be given by the practicing bar and trial courts to the preemptory nature of the statute requiring written and specific findings to avoid appeal remand in future cases where there is deviation from the "guidelines".

What we say is that rational judgment of the trial court supports the duty of the payment established by the divorce decree. *Mintle v. Mintle*, 764 P.2d 255 (Wyo.1988). We do not accept the conclusion of the father that the decision was either intentionally or effectively punitive. *Rowan v. Rowan*, 786 P.2d 886 (Wyo.1990). We do not overlook the result of potential future enforcement of the present arrest warrant which is subject to the defenses of reasonable effort and inability to pay the monthly child support payments. *Secrest v. Secrest*, 781 P.2d 1339 (Wyo.1989). Without regard for insurance, it surely has been demonstrated that he has the ability and should be regularly and properly making the required child support payments. We agree with the father that the present record does not demonstrate that he is just a lazy man, when he is recognized to be 100% disabled in most active physical occupations after a series of back operations.

We presently decide the validity of a parent's initial duty to provide support for his children. Questions of enforceability via contempt proceedings if inability to pay is demonstrated is not now presented or determined. *Secrest*, 781 P.2d 1339. We do not view the discretional decision of the trial court to have been abused in the support order entered. *Manners v. Manners*, 706 P.2d 671 (Wyo.1985). Nothing in this record demonstrates that the defense of inability to acquire the insurance may or may not be a proper defense to the pending contempt activity. *Ferguson v. Ferguson*, 481 P.2d 658 (Wyo.1971). We are, however, faced with a *Connors*, 769 P.2d 336 problem if the father continues his neglect to make the ongoing child support payments. *See Jessen v. Jessen*, 810 P.2d 987 (Wyo.1991) and *Jessen v. Jessen*, 802 P.2d 901 (Wyo.1990).

In this record, there is no established basis to fit the medical insurance cost within any income level support guidelines. See, however, W.S. 20–6–401. Unfortunately, the legislature cannot create money that is not in the hands of the parents with any more precision than can the judiciary by court order.

It is hard to expect that any creditor is realistically trying to collect either the credit card balances or the mobile home deficiency from the mother considering her present lack of income. The father may be faced with payment or bankruptcy without regard for the divorce decree. This record is clearly insufficient to demonstrate benefit-cost problems with health insurance or, if in fact, a reasonable opportunity for the father to obtain the insurance actually exists.

CARDINE, Justice, dissenting.

I cannot concur in the opinion as written for the following reasons:

The court states:

"Obviously, today, two young children cannot be supported and raised adequately on $250 per month." Maj.op. at 724. If the statement is limited to this case only, it is less objectionable. But it should be made clear that we are not setting a minimum standard for the support of two children in every case, for we have said in *Nuspl v. Nuspl*, 717 P.2d 341, 344 (Wyo. 1986) that:

"The fact noticed in the present case was the 'cost' of raising one, two and three children. We do not think it arguable that this 'fact' can be generally known within the jurisdiction of the trial court, and because such cost varies widely, depending on a myriad of circumstances, we do not find that it is a fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The cost of raising these children is subject to reasonable dispute; it is not capable of accurate determination by resort to any study. The cost of raising a child is the heart of the controversy in support proceedings, and it will vary in each case depending upon the child's health, educational needs, age, and a host of other circumstances including, specifically, the economic circumstances of the parents."

Amounts needed by a mother to raise two children depends upon place of residence— rural or urban—occupation of the mother, living standard, assets and income of par-

ties and other intangibles that factor into the amount.

The court then states:

"The striking problem is medical insurance. We affirm the obligation for the father if it can be acquired within the reasonable allocation of resources that he has, e.g., probably a group policy at his mother's business. If he cannot (and this record thus far clearly fails to reveal capability), he would be entitled to defend any contempt proceeding on the basis of reasonable efforts to obtain and to maintain insurance." Maj.op. at 724.

This statement is indefinite, indecisive, and effectively results in no decision at all. The opinion suggests that appellant should pay for and obtain medical insurance if he can; but if he cannot pay for medical insurance, then there will probably be future contempt proceedings which he should defend based upon his reasonable efforts. These meanderings, recommendations, and suggestions invite appellant to a future course of action which will be a problem for this court when the case comes back before us, as the opinion recognizes will surely happen. The statement is no decision at all and demonstrates the need for remand for factual determination of the stated unknowns.

The monetary effect of the sum of child support and the medical insurance award is to allocate more than 50 percent of appellant's earnings to the wife. I would remand this case to at least require compliance with W.S. 20–6–302(b) which provides:

"A court may deviate from the child support guidelines established by W.S. 20–6–303 and 20–6–304 if it issues written findings that application thereof would be inequitable to the parties or not in the best interests of the child." (Cum.Supp. 1989)

The trial court has deviated from the child support guidelines, exceeding them by 100 percent, and, pursuant to the above statute, must issue written findings showing that application of the support guidelines would be inequitable, or not in the best interests of the children. With the record before us, we cannot know in this

case whether there was an abuse of discretion or not in the support order entered by the court.

I would remand for further proceedings consistent with this dissent.