JOHN PANGELINAN,

    Plaintiff/Appellee,

vs.

UNKNOWN HEIRS OF RITA
MANGARERO, and ALL OTHER
PERSONS CLAIMING ANY RIGHT,
TITLE, ESTATE, LIEN, OR
INTEREST IN LOT 1856 NEW-7,
NEW 3-1, NEW 4-1, and NEW
4-R1, GARAPAN, SAIPAN,
NORTHERN MARIANA ISLANDS,

    Defendants/Appellants.

APPEAL NO. 90-015
CIVIL NOS. 87-130, 87-407,
87-408, & 87-409

OPINION

Argued and submitted on October 5, 1990.

Counsel for Appellant/Norita:    Douglas F. Cushnie
P.O. Box 949
Saipan, MP 96950

Counsel for Appellee/Pangelinan:    Randall T. Fennell
P.O. Box 241 CHRB
Saipan, MP 96950

Counsel for Appellee/Alvarez:    F. Randall Cunliffe
210 Archbishop F.C. Flores
Street, Suite 200
Agana, GU 96910

BEFORE:    DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

In 1986, John Pangelinan (hereafter Pangelinan) purchased four parcels of land in Garapan, Saipan, from Edward Norita (hereafter Edward). The parcels are identified as Lots 1856 New-7, 1856 New 3-1, 1856 New 4-1, and 1856 New 4-R1. In 1987, Pangelinan filed four separate actions in order to quiet title to the same four parcels of land.

Cynthia Alvarez (hereafter Alvarez) answered the complaints in three of the actions, alleging that she purchased three of the parcels of land from Edward, prior to Pangelinan's purchases. The parcels she alleged to have purchased were Lots 1856 New 3-1, 1856 New 4-1, and 1856 New 4-R1.

Jose Norita (hereafter Jose), Edward's brother, answered the complaints and alleged that he owned all four parcels of land in that his grandmother, Mariana M. Matagolai (a/k/a Mariana Taman, hereafter Mariana), orally conveyed to him the land in 1961.

The four quiet title actions were consolidated and went to trial. The trial court found that all four lots had originally belong to Rita Mangarero, deceased.[1] The land thereafter descended to Rita's daughter, Mariana, except for Lot 1856 New-7. The ownership of this lot remained in the heirs of Rita Mangarero until they conveyed it to Edward. Mariana gave a power of attorney to

---

[1] Rita Mangarero was the mother of Mariana, who in turn was the mother of Isabel Norita. Isabel Norita is the mother of Jose and Edward.

Edward with authority to transfer her interests in all her land.

The trial court further found that Edward initially sold three of the lots to Alvarez in 1985, then subsequently sold the same lots to Pangelinan in 1986. The lot not sold to Alvarez was Lot 1856 New-7. Based on those findings, the trial court concluded that Pangelinan owned Lot 1856 New-7 and Alvarez owned Lots 1856 New 3-1, 1856 New 4-1, and 1856 New-R1.

Pangelinan and Alvarez did not appeal the decision of the trial court. However, Jose filed a timely appeal and raised four issues for our review.

## ISSUES

1. Whether the trial court erred by not concluding that all of the deeds executed by Mariana should be cancelled.

2. Whether the trial court erred by not concluding that Pangelinan and Alvarez failed to qualify as bonafide purchasers.

3. Whether the trial court erred by not concluding that the transfers by Edward, pursuant to a power of attorney given him by Mariana, were void.

4. Whether the trial court erred in refusing testimony from Edward regarding Jesus Taisacan on the basis that it was hearsay.

## DISCUSSION

### A. Our appellate jurisdiction.

Appellant originally filed his appeal to the Appellate Division of the U.S. District Court for the Northern Mariana

Islands (hereafter Appellate Division) prior to May 2, 1989. The Appellate Division, prior to May 2, 1989, had jurisdiction to hear the appeal pursuant to 1 CMC § 3301[2] and 48 U.S.C. § 1694b(a).[3]

On May 2, 1989, CNMI Public Law 6-25 repealed 1 CMC § 3301 (the law that conferred appellate jurisdiction on the Appellate Division) and transferred all appeals then pending before the Appellate Division to the NMI Supreme Court. The Appellate Division maintained, however, that its appellate jurisdiction remained and, in April, 1990, issued an opinion on the appeal before it. Counsel advised us at oral argument that the decision of the Appellate Division has been further appealed to the U.S. Court of Appeals for the Ninth Circuit (hereafter Ninth Circuit).

We have previously held that all appeals pending in the Appellate Division were transferred by operation of law to this Court on May 2, 1989, and that the jurisdiction of the Appellate Division was removed by Public Law 6-25. Wabol v. Villacrusis, No. 89-005 (N.M.I. December 11, 1989) and Vaughn v. Bank of Guam, No. 89-004 (N.M.I. June 6, 1990). The Ninth Circuit has also ruled that the Appellate Division has no jurisdiction in any appeal pending before it on May 2, 1989. CNMI v. Kawano and Yoneda, No.

---

[2] "The District Court for the Northern Mariana Islands shall have jurisdiction of all appeals from final judgments, final orders, and final decrees in criminal cases and in civil cases and proceedings."

[3] "Prior to the establishment of an appellate court for the Northern Mariana Islands, the District Court shall have such appellate jurisdiction over the courts established by the Constitution or laws of the Northern Mariana Islands as the Constituion and laws of the Northern Mariana Islands provide ...."

90-10254 (9th Cir. October 16, 1990). The Ninth Circuit in Kawano stated:

> Our jurisdiction to review the district court depends on the existence of jurisdiction in the district court .... The jurisdiction of the appellate division, which is established by § 1694b(a), has only that jurisdiction which the laws of the Northern Mariana Islands provide.
>
> . . . .
>
> The Act (Public Law 6-25) repealed 1 CMC § 3301 which had conferred appellate jurisdiction on the United States District Court.
>
> By establishing an appellate court for the Northern Mariana Islands, the Act also rendered 48 U.S.C. § 1694b(a) inapplicable because it only governs appellate jurisdiction 'prior to the establishment of an appellate court for the Northern Mariana Islands.'
>
> . . . .
>
> The Commonwealth had withdrawn appellate jurisdiction over its trial court from the district court. The district court had no jurisdiction and we have none.

Kawano, slip op. at 12954, 12955, 12957.

It is, therefore, clear that we assumed jurisdiction over this appeal as of May 2, 1989.

B.  **Cancellation of all deeds executed by Mariana.**

Appellant begins his argument regarding this issue by asserting that at the time of the transfers, which are at issue here, the entire property belonged to him and not to Mariana.[4] He gives four reasons why the trial court should have cancelled the

_____

[4] This is one of the ultimate issues of fact which the trial court found against appellant.

392

deeds executed by Mariana:

(1) There was a total lack of consideration given to Mariana.

(2) Mariana was of advanced age and severe physical weakness, which implied a mental weakness.

(3) Mariana did not read, write, or speak any language other than Carolinian and was presented with documents in English which were explained to her by notaries who spoke only English and Chamorro.

(4) Mariana orally transferred all the property to Jose prior to her executing the subject deeds.

These four reasons are factual issues which were disputed and adjudicated at trial. The trial court weighed the evidence and found the facts in favor of Pangelinan and Alvarez.

The appellant has to convince us that the findings of the trial court are clearly erroneous before we could accept his factual version. Sablan v. Iginoef, No. 89-008 (N.M.I. June 7, 1990). Further, if we were to accept the above statements of fact as true, contrary to the trial court's findings, then we would be substituting our own findings for those of the trial court's, which we ordinarily cannot do. CNMI v. Cabrera, 3 CR 656 (D.N.M.I. App. Div. 1989).

We are not convinced that the factual findings are clearly erroneous. The trial court found that the conveyances from Mariana were valid. Our review of the record shows the conveyances to be supported by adequate consideration. Conveyances to one's children, supported by love and affection, constitute adequate

consideration. <u>Florida National Bank & Trust Co. v. Harris</u>, 366 So.2d 491 (Fla.App. 4th Dist. 1979). Such was the case here.

The trial court did not find Mariana to have been mentally incompetent. The evidence support that finding and is consistent with appellees' assertion that a person is presumed to be competent until proven otherwise. <u>Pangelinan v. Tudela</u>, 1 CR 708, aff'd 733 F.2d 1341 (1984).

The trial court found the deeds executed by Mariana to be valid. Although Mariana did not read, write, or speak English, the trial court inferred, from the facts before it, that she knew what she was signing and that the instruments were explained to her by the notaries public or other people around her.

Finally, the trial court determined that the conveyances to Pangelinan and Alvarez were valid since Mariana did not orally convey the land to Jose in 1961. The absence of an oral conveyance to Jose is corroborated by Mariana subsequently giving Edward the power of attorney to transfer the land for her.

The trial record substantially support the factual findings of the trial court. We, therefore, decline to set aside the trial court's decision with respect to the deeds executed by Mariana.

## C. Pangelinan and Alvarez' qualifications as bonafide purchasers for value.

Jose contends that Pangelinan and Alvarez do not qualify as

bonafide purchasers[5] of the land they claim.

In support of this contention, Jose asserts:

(1) That Mariana and Isabel (Mariana's daughter) did not receive any consideration for any transfer which they made.

(2) Pangelinan and Alvarez were fully aware of the chain of title because they drafted the deeds.

(3) Pangelinan and Alvarez did not deal directly with Mariana, instead they used intermediaries, which meant that they did not act in good faith.

(4) Jose told both Pangelinan and Alvarez that Edward did not have any land to transfer.

These contentions are again factual issues which were adjudicated at trial. The trial court weighed the evidence and found in favor of Pangelinan and Alvarez. We are not persuaded that the trial court was clearly erroneous in finding that Pangelinan and Alvarez purchased the land for valuable consideration, without knowledge of any third party's claim of interest therein.

As we have stated above, love and affection constitute adequate consideration for a deed of conveyance to a daughter or son. Therefore, Mariana and Isabel's conveyances were supported by consideration. In addition, there is evidence that Edward received

---

[5] "Bonafide purchaser for value is one who, without notice of another's claim of right to, or equity in, property prior to his acquisition of title, has paid vendor a valuable consideration." Black's Law Dictionary, 161 (5th Ed. 1979).

certain consideration for his conveyances.

Even if it is true that Pangelinan and Alvarez drafted the deeds and knew of the chain of title, that does not mean that they knew of Jose's claim or that such claim was valid. However, since the trial court found that Jose had no valid claim of right, the deeds in favor of Pangelinan and Alvarez are not affected by such claim.

The fact that Pangelinan and Alvarez dealt through intermediaries, by itself, does not mean that they acted in bad faith. The trial record does not support a finding that by using intermediaries there was evidence of bad faith.

Finally, even if Jose testified that he told Pangelinan and Alvarez that Edward did not own the land, the trial court did not give credit to that testimony. Part of the testimony established that Jose talked to Pangelinan after Pangelinan purchased the land from Edward.

D. **The validity of the transfers by Edward, pursuant to a power of attorney given him by Mariana.**

In support of his contention that the power of attorney was ineffective, the appellant argues that:

(1) Although the power of attorney was good when given in 1974, the land value increased from 1974 to 1986. That increase in land value constitutes a change in condition which effectively terminated the power of attorney.

(2) Mariana was incompetent at the time that the power was exercised. Therefore, her incompetency terminated the effective-

ness of the power of attorney.

(3)    The act of selling the land was so detrimental to Mariana's interest that Pangelinan should have been put on notice not to rely on the power of attorney.

Appellee, Pangelinan, responded that:  (1) this is not a case where the power of attorney authorized Edward to sell the land for $.25 a square meter in 1974, then sold it for that price twelve years later in 1986,[6] (2) Mariana's alleged incompetency is a question of fact which the trial court did not find to be true, and (3) these are disputed issues of fact which were adjudicated at the trial level and the factual findings of the trial court have not been shown to be clearly erroneous.

We agree with the appellee.  Appellant did not present evidence showing what the increase in land value was and how that voided the power of attorney.  The trial court found Mariana to be competent and that has not been shown to be clearly erroneous. Finally, the trial record does not show that the conveyances were seriously detrimental to Mariana's interest or that Pangelinan knew of such detriment.  Therefore, we have no basis for concluding that Pangelinan should have been put on notice not to rely on the power of attorney.

E.    **Admission of the testimony of Edward regarding Jesus Taisacan.**

---

[6] Appellant did not present evidence to show that the land was sold for less than reasonable value.

Appellant contends that the statement of Jesus Taisacan (explaining a land document) offered through the testimony of Edward was not hearsay because it was not being offered for the truth of the matter asserted. It was being offered only as a basis for Edward's reaction to the statement. Edward's reaction (that of being surprised) would be hearsay under Rule 801(a), but it also falls under the exceptions in Sections 801(d)(1)(B) and Rule 803(2), Commonwealth Rules of Evidence.

The appellant does not take a position whether the error he asserts is reversible error. We assume that he thinks it is.

Pangelinan counters that if it is error, the error is harmless because other evidence have been admitted on the same point.[7] For example, Edward testified that he did not transfer any land to Pangelinan because he had no document and the property was not his. Therefore, the admission of that evidence would not have had substantial influence in bringing about a different finding.[8] Thus, the trial court properly exercised its discretion.

We agree with the appellee. In order for this Court to find reversible error, we must find that by excluding the evidence, a substantial right of the appellant is affected.[9] Here, the

---

[7] _Harrington v. Harrington_, 660 P.2d 356 (Wyo. 1983) citing 1 Louisell & Mueller, _Federal Evidence_, § 20 at pp. 111-112 (1977).

[8] _Redev. AGCY of Salt Lake City v. Tanner_, 740 P.2d 1296 (Utah 1987).

[9] Rule 103(a), Commonwealth Rules of Evidence. Appellant complied with Rule 103(a)(2) by making an offer of proof.

excluded evidence is cumulative, merely corroborative, not consequential and would not affect a substantial right of appellant.

Finally, whether to admit or exclude evidence is within the sound discretion of the trial court. CNMI v. Delos Santos, 2 CR 665 (D.N.M.I. App.Div. 1989). Appellant has the burden of showing that the trial court clearly abused that discretion. Absent such abuse, we should affirm. Here, appellant failed to show clear abuse of discretion.

The judgment of the trial court is hereby AFFIRMED.

Dated this ___1st___ day of ___November___, 1990.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice