2001 WY 113

**Brad HOLLAND, Appellant (Plaintiff),**

v.

**Karen HOLLAND, Appellee (Defendant).**

No. 00–291.

Supreme Court of Wyoming.

Nov. 29, 2001.

Representing Appellant: David A. Nicholas and Julie M. Yates of Anthony, Nicholas, Goodrich & Tangeman, LLC, Laramie, WY. Argument by Ms. Yates.

Representing Appellee: Anthony F. Ross and Russell W. Sinnett of Ross, Ross &

Santini, LLC, Cheyenne, WY. Agrument by Mr. Ross.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Appellant, Brad Holland (Husband), seeks review of isolated provisions of an order of the district court, which he claims erroneously divided his premarital assets, as well as an inheritance he received during the year preceding the divorce with Appellee, Karen Holland (Wife). Husband also asserts that a lifetime non-competition agreement to which he stipulated during trial is unenforceable as a matter of law.

[¶ 2] We affirm.

### ISSUES

[¶ 3] Husband's brief states these issues:

1. Did the district court abuse its discretion by dividing appellant's inheritance received by him during the year preceding the parties' divorce as well as his premarital assets?

2. Is the life long non-compete agreement stipulated to by appellant during the trial unenforceable as [a] matter of law?

Wife rephrases those issues as follows:

I. Whether the distribution ordered by the district court was just and equitable under applicable Wyoming precedent and statutory law and was not an abuse of discretion.

II. Whether the district court was correct to deny plaintiff's Rules 59 and 60 [W.R.C.P.] motion to reconsider, alter or amend judgment; whether the non-compete agreement, under all of the circumstances, should be enforced and upheld because it is not in violation of Wyoming law or against public policy.

### FACTS

[¶ 4] The facts included in the portion of Husband's brief devoted to the "statement of the facts" do not conform to the standard of review to be applied in a case such as this, nor do they give meaningful recognition to Husband's burden in this appeal. Husband limits his recitation of the facts to those that are favorable to his contentions, while wholly ignoring the totality of the facts and circumstances that the district court had to digest and then apply to its decision-making process. Husband included in the record almost all of the exhibits introduced on his behalf during the proceedings before the district court, but did not include any of the exhibits introduced by Wife which, of course, the district court was required to consider in formulating the divorce decree and dividing the parties' marital estate. Although it is not a fact of central importance, we do take note that the approximate dollar total of all assets owned by both parties, including those in dispute in the instant appeal, was about $2.5 million. We also note, as a matter generally applicable to an understanding of the facts pertinent to this appeal, that as a strategy in estate planning, many of the assets were in the parties' individual names, rather than jointly owned. When the distribution of the marital estate was complete, each party ended up with about one-half of those total assets.

[¶ 5] The parties were married on January 10, 1985, and the marriage was dissolved by decree of divorce that became final on July 26, 2000. For the most part, the parties were able to resolve their differences amicably. An exception to that amity revolved around separately owned assets, which husband claimed he brought to the marriage in the approximate amount of $100,000.00. However, the record reflects that in his opening statement, Husband qualified his claim in this regard to a statement that "some" of those assets were decipherable, but that "some of that's pretty muddy." Indeed, to the extent it was a factor of measurable significance in the resolution of this case, Husband conceded that he could not prove he had brought $100,000.00 to the marriage. It was agreed that he had purchased the home the couple initially lived in (referred to as the Comanche property) for $64,000.00 in 1984. That property was a duplex, and the parties lived in it for about four years before moving to a second marital home (referred to as the Granito property). They continued to

rent the Comanche property for a number of years after moving to the Granito property, and when the Comanche property was finally sold, the proceeds of that sale were deposited into their joint bank accounts and used for mutual purposes associated with the marriage. Wife testified that while the couple lived in the Comanche property, she paid all household bills in recognition that Husband had purchased the property. In the district court's decree, one of the assets Husband received was a 100% interest in the Granito property. For purposes of clarity, we will take note at this juncture that Husband contends that the district court indicated in its decision letter that it did "not intend to retrace and restore to [Husband] funds invested and absorbed into the marriage years ago, even if [Husband] held them prior to the marriage." It is Husband's contention that the district court thereby abdicated a part of its duty under Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2001) (emphasis added), which provides:

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, **the party through whom the property was acquired** and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

[¶ 6] The second exception to the parties' otherwise amicable dissolution of their marriage was an inheritance that Husband received from his grandmother in 1998. The approximate sum of that inheritance was $180,000.00, and that sum was on deposit in an investment account at a Laramie bank.

Husband held that property in his own name. However, prior to Husband's receipt of the inheritance, the $180,000.00 was invested conservatively, so the securities in that account were sold and the parties pursued more aggressive investments. That transaction generated significant capital gains taxes, and the parties paid those taxes from their joint bank accounts (not out of the inheritance itself). That account grew dramatically from the time of the inheritance until the time of the divorce, and its value at the time the divorce decree was entered was approximately $324,000.00. During the course of the proceedings, the parties agreed in principle that their marital assets should be split 5%0, but it was Husband's position that his $100,000.00 in premarital assets and the money he inherited from his grandmother, including its appreciation, should be given over to him before the 5%0 split was made. The district court opined in the decision letter which accompanied the divorce decree that it would not set over to Husband the above-described assets before distributing the marital estate, but would instead apply the standard set out in Wyo. Stat. Ann. § 20–2–114 to the overall distribution of all assets of the parties, without regard to whose name those assets were in. In the divorce decree, Husband received 100% of the account, which contained the inheritance Husband received from his grandmother. As an additional matter, we must note that Husband contends that a separate provision of the divorce decree, which required Husband to pay Wife $135,000.00 in cash, was clearly the district court's way of giving Wife half of Husband's inheritance.

[¶ 7] As a part of the agreed upon settlement of the disposition of the parties' marital estate, it was established that Wife would get the family dry-cleaning business, which the parties agreed was worth $685,000.00.[1] In exchange, Husband received the Granito property and two rental properties that the parties agreed had an aggregate value of

---

1. The record reveals that Husband contended the business was worth only $325,00.00 $350,00.00 when the issue was whether he would have to pay Wife one-half the value of the business. Wife valued the business at as much as $815,000.00. Based on Husband's valuation of the business, Wife paid Husband about $340,000.00 for the covenant not to compete.

$685,000.00.[2] Included in this stipulation was an agreement by Husband that he would not compete in Albany County with the business given over to Wife for the remainder of his life. Wife negotiated for that agreement based, in significant part, on threats by Husband that if Wife obtained the business, he would open his own dry-cleaning business as close as possible to the existing business, and run her out of business. Husband entered into that agreement, on the record, freely, voluntarily, and with full opportunity for consultation with his lawyers. Two weeks after the decree was entered, Husband changed his mind and asked the district court to declare the lifetime non-compete agreement to be void as a matter of law on public policy grounds, and to reduce the non-compete agreement to no more than a two-year period of time.

## STANDARD OF REVIEW

[¶ 8] There are few rules more firmly established in our jurisprudence than the proposition that the disposition of marital property is committed to the sound discretion of the district court. Judicial discretion is made up of many things, including conclusions reached from objective criteria, as well as exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We are required to ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Belless v. Belless,* 2001 WY 41, ¶ 6, 21 P.3d 749, ¶ 6 (Wyo.2001); and *see McLoughlin v. McLoughlin,* 996 P.2d 5, 7–8 (Wyo.2000), and *Paul v. Paul,* 616 P.2d 707, 712–13 (Wyo. 1980).

## DISCUSSION

### Property Distribution

[¶ 9] Applying the standard of review set out above, and the guidance found in Wyo. Stat. Ann. § 20–2–114, we are compelled to conclude that Husband has simply not posited so much as a suggestion that the district court abused its discretion. Moreover, we see no flaws in the district court's reasoning process. With respect to the $100,000.00 in premarital assets, Husband admitted that he could only demonstrate that he put $64,000.00 into the Comanche property. The district court did not refuse to determine which party was most responsible for the acquisition of that property; it merely acknowledged that it was an exercise in futility, as well as a practical impossibility, to attempt to trace that particular asset from its origins, which preceded the 1985 marriage (when the parties lived together but were not married), until the dissolution of the marriage. The district court's conclusion can only be interpreted to be a determination that Husband's premarital assets were so comingled with the marital estate so as to have lost their premarital identity. In addition, Husband's speculation that the district court directed him to make a cash payment of $135,000.00 as a way of giving Wife one-half of his inheritance is just that, no more than idle speculation. Finally, Husband's failure to designate all exhibits as a part of the record and his focus on only those facts favorable to his point of view violates one of this Court's primary review standards, *i.e.,* to view the record in a light most favorable to Wife. Husband contends that this Court must be able to ascertain with certainty what the basis for that $135,000.00 payment is. The contrary is true. Husband had the burden of demonstrating that the evidence adduced before the district court did not support the property distribution as a whole. This he has failed to do. We hold there was no abuse of discretion in the disposition of the parties' marital estate.

### Non-competition Agreement

[¶ 10] Although the matter is not as clearly joined as a viable issue for complete resolution in this appeal as would be optimal,

---

**2.** Wife received no real property in the division of the marital estate, except that $5,000.00 of joint funds was used as a deposit on a property she was renting with an option to buy.

especially in view of Husband not having raised the issue in the trial court except in the form of a motion to reconsider, alter or amend the judgment filed two weeks after the decree was entered of record, we deem it prudent to finally resolve this issue. The parties both ask this Court to fully and finally resolve it, it is thoroughly briefed and argued, and it is in the best interests of judicial economy and the sound administration of justice that this issue be put to rest as between these two parties. A primary goal of the dissolution of marriage and the distribution of the marital estate is to separate the parties to the extent possible and let them get on with their lives. *Belless,* 2001 WY at ¶ 8, 21 P.3d at ¶ 8 (citing *Grosskopf v. Grosskopf,* 677 P.2d 814, 821 (Wyo.1984)). Whether reviewed on its merits, or in the light of the standard of review applicable to appellate consideration of a trial court ruling on a Rule 59 or 60 motion, the district court is afforded very broad discretion. In addition to showing an abuse of discretion in the distribution of the marital estate, Husband must also clearly demonstrate that the covenant not to compete was unreasonable with respect to the lifetime duration provision. Unlike the situation in the employer-employee covenant not to compete, in the circumstance of the sale of a business, the burden is on the one challenging the covenant not to compete. *Electrical Distributors, Inc. v. SFR, Inc.,* 166 F.3d 1074, 1084 (10th Cir. 1999); *In re Marriage of Fischer,* 834 P.2d 270, 273–74 (Colo.App.1992); 17B C.J.S. Contracts § 708 (1999); *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 539 (Wyo. 1993).

[¶ 11] As an additional prefatory matter, we note that Husband does not ask that the distribution of the marital estate be set aside and recomputed in light of his challenge to the covenant not to compete, but only that he be relieved of his contractual obligations in that regard.

[¶ 12] As a starting point for his contentions, Husband posits that non-competition agreements are void and unenforceable. Of course, that is a considerable exaggeration.

To bolster his argument, Husband relies in significant part on our decision in *Hopper.* In that case, we set out some of the basic policies with respect to the enforcement of a covenant not to compete between an employer and an employee. 861 P.2d at 539–47. However, *Hopper* is a case that deals with the covenant not to compete in the context of the employer-employee relationship and has only tangential applicability to the facts and circumstances of this case. In *Ridley v. Krout,* 63 Wyo. 252, 180 P.2d 124, 127 (1947), we referred to the principle that is specifically at issue in this case, *i.e.,* that courts are less disposed to sustain an agreement which forms part of a contract for employment, than where similar agreements are attached to a contract of sale. *Also see* 17 C.J.S. Contracts § 96 at 564 (1999). The reason for that difference is that in a case such as this, there is less likely to be hardship to the promissor and less chance of any injury to the public. An important part of our analysis must include a weighing of the right to contract with the public policy to the effect that, in some circumstances, such covenants are not favored. We conclude that the covenant at issue here most closely resembles one incident to a contract of sale.[3]

[¶ 13] The most useful rule of thumb to be used in this case is that "[e]ach case must turn on its own facts, with the courts seeking to divine the intent of the parties with respect to the dependency of particular promises, and to reach fair and reasonable results." 15 Samuel Williston on Contracts § 44:18 at 119 (4th ed.2000). In addition, where it is clear that the covenant not to compete is at the heart of the agreement between the parties, so that it can be said that the parties would not have entered into that agreement without the covenant, then the agreement may be enforceable. *Id.* at 121; *Greenstein v. Simpson,* 660 S.W.2d 155, 159 (Tex.App.1983). In the case *Boggs v. Friend,* 77 W.Va. 531, 87 S.E. 873, 875 (W.Va.1916), a covenant not to compete which did not include a specific period of duration was permitted to endure during the seller's lifetime,[4] noting, "The place of busi-

---

**3.** The record reflects that is precisely how the parties negotiated it.

**4.** Husband agreed at trial that the covenant not to compete should be for his lifetime. Some

ness being in the country, where the changes in the circumstances and conditions of the business are few and naturally of slow growth, it is not likely lifetime restraint on defendant would work a hardship upon him or be regarded unreasonable." *Also see* generally, *Electrical Distributors*, 166 F.3d at 1085–86 (seven-year restriction not unreasonable); Ferdinand S. Tinio, Annotation, *Enforceability, Insofar as Restriction Would be Reasonable, of Contract Containing Unreasonable Restrictions on Competition*, 61 A.L.R.3d 397, 1975 WL 37060 (1975 and Supp.2001); Russell L. Wald, Annotation, *Unreasonableness of Covenant Not to Compete*, 20 Am.Jur. Proof of Facts 3d 705, § 11 (1993 and Supp.2001).

[¶ 14] Husband directs our attention to several cases wherein a covenant not to compete was used as a device in distributing the marital estate. Some of these cases are distinguishable, and some of them simply are not persuasive in the circumstances at hand. In *Favell v. Favell*, 1998 OK CIV APP 22 ¶¶ 7–10, 957 P.2d 556, ¶¶ 7–10 (Okla.Civ.App. Div. 3 1997), the appeals court reversed a court-imposed covenant not to compete because it was forced upon the parties by the district court, rather than them agreeing to it. In addition, the *Favell* court reasoned that the court-imposed condition amounted to a division of a spouse's future earning capacity and tended to violate an explicit Oklahoma statute. None of those circumstances are present here.

[¶ 15] In the case *Carr v. Carr*, 108 Idaho 684, 701 P.2d 304, 307–10 (App.1985), the appellate court was dealing with a third party purchaser because the parties were unable to agree on a division of a business (truck stop) they jointly owned. The validity of the covenant was not contested. The only issue decided by the appellate court was how the property was to be valued and whether husband should receive a larger share than wife of the proceeds of the sale (Idaho is a community property state).

[¶ 16] In *Wells v. Wells*, 9 Mass.App.Ct. 321, 400 N.E.2d 1317, 1321 (1980), the appellate court held that a covenant not to compete stipulated to by the parties was unreasonable to the extent it was not time limited. The court approved a 52–month time period, which was co-extensive with the period of time in which wife was to pay husband for his share of their home-healthcare business. The basis for that decision was that the record supported a finding that no harm would flow from husband's competition to wife's business, if husband were permitted to compete after the 52–month period. In the instant case, Husband presented no evidence that would sustain such a finding, and, to the contrary, Husband evinced a specific intent to compete with Wife to the end that her business would be destroyed.

[¶ 17] In *Ulmer v. Ulmer*, 717 S.W.2d 665, 667–68 (Tex.App.–Texarkana 1986), an appellate judge held that a trial court exceeded its jurisdiction by enjoining the husband from practicing his profession of providing janitorial services because injunctive relief was not sought by the parties "and because an individual's right to practice his profession is not subject to division by the court." That precedent is not of persuasive value in the immediate circumstances.

[¶ 18] In *Lord v. Lord*, 454 A.2d 830, 834–35 (Me.1983), the Supreme Judicial Court of Maine held that a trial court finding that a non-competition agreement was necessary for a fair and just division of marital property was supported by evidence in the record. The court held that without such an agreement, "the substantial value of the intangible good will would be lost or the parties would be left to compete in recapturing this portion of their marital property." The focus of the Maine court's concern was that wife did not consent to the covenant; rather, the trial court imposed it. The Maine court also found a seven-year covenant was not supported by evidence in the record. The matter was remanded to the trial court for development of the record, as well as to adjust the alimony in light of any modification to the

---

other reasonable possibilities might have been for Wife's lifetime, for so long as Wife owned the business, or for a period, *e.g.*, of ten years. A consideration in some cases might be the age of

the parties and/or their projected working-lives. In this case the ages of the parties are not part of the record.

court-mandated non-competition covenant. We do not consider that case of persuasive value under the circumstances of this case.

[¶ 19] In *Fischer*, 834 P.2d 270 at 273–74, the Colorado Court of Appeals held that the disposition of property in a marriage dissolution proceeding action is analogous to the sale of a business and was excepted from a specific Colorado statute limiting covenants not to compete. The Colorado court found a three-year limitation period to be reasonable under the circumstances of that case. We view this case as supporting our ultimate conclusion.

### CONCLUSION

[¶ 20] We hold that under the unique circumstances of this case, Husband has failed to demonstrate that the lifetime covenant not to compete is unreasonable. Husband voluntarily agreed to the covenant as part of arm's length negotiations and without coercion from the district court, he received in excess of $300,000.00 as consideration for his agreement (as well as receiving all of the parties' real property, much of which was income producing), and Husband had evinced a desire to drive Wife out of business through direct competition (and he had the financial means to do so). The decree and orders of the district court are affirmed in all respects.