2003 WY 36

**Terry A. ROOT, Appellant (Defendant),**

v.

**Pamela Potter ROOT, Appellee (Plaintiff).**

No. 01–137.

Supreme Court of Wyoming.

March 13, 2003.

James K. Lubing of James K. Lubing Law Office, Jackson, Wyoming, Representing Appellant.

George L. Simonton and M. Jalie Meinecke of Simonton & Simonton, Cody, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Terry A. Root (the husband) and Pamela Potter Root (the wife) were married for almost eighteen years during which time the wife obtained a medical degree.  After acquiring a pathology business in Cody and practicing there for several years, the wife filed for divorce.  The trial court divided the marital property, including the value of the pathology business, equally between the parties.  The husband appeals the trial court's division of property contending the value of the pathology business was too low and he was entitled to a larger share of the marital property because of the financial support he provided and the career sacrifices he made to further the wife's medical education.[1]  We affirm the trial court's property division and remand the matter for conformation of the Decree of Divorce with the decision letter.

## ISSUES

[¶ 2]   The husband presents these issues for resolution:

I.   Whether the Court abused its discretion in determining the value of the business as its decision was not supported by the evidence at trial.

II.   Whether the Court abused its discretion in accepting opinion testimony from [the wife's] expert, as he was not

---

* Chief Justice at time of oral argument.

1.   The parties stipulated to remand of the child support issue, and this court issued an order on February 14, 2002, remanding the matter to the trial court.

qualified as an expert, and had done no substantive review of the value of the business.

III. Whether it was error for the Court not to take career sacrifices into account when determining property distribution.

IV. Whether it was error for the Court to allow [the wife] to deduct over three thousand dollars ($3,000.00) per month for child support calculation purposes where such sum is clearly includable in her income pursuant to § 20–2–303(a)(ii) & (iii).

The wife frames the issues in the following manner:

I. Did the trial court abuse its discretion in determining the value of Big Horn Basin Pathology?

II. Did the trial court abuse its discretion in considering the expert testimony?

III Did the trial court abuse its discretion in the manner in which it determined the marital sacrifices issue?

IV. Did the court properly consider the parties['] financial affidavits in determining the child support calculations?

### FACTS

[¶ 3] The applicable standard of review requires we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Belless v. Belless,* 2001 WY 41, ¶ 6, 21 P.3d 749, ¶ 6 (Wyo.2001). For this reason, we consider the facts in a manner most favorable to the wife as the prevailing party in the trial court.

[¶ 4] The husband and the wife married on July 16, 1983. At the time, the husband worked for the United States Forest Service as a wildlife biologist and expressed an interest in attending law school. The wife was a licensed practical nurse, held a degree in journalism, and intended to go to medical school. She had saved some money to fund her medical school costs prior to meeting and marrying the husband. In the spring before the marriage, the husband took steps to apply to law school but did not pursue this career option any further. The wife applied

to medical school. After the marriage, she attended Creighton University Medical School in Nebraska through the University of Wyoming contract program which pays a portion of the student's school costs in exchange for a commitment to practice in Wyoming for a period of time upon graduation. The husband took a series of jobs which were essentially lateral transfers in order to remain close to the wife while she attended school. The wife gave birth to three children while she was attending medical school. Both spouses contributed to the family's living expenses, the husband through his full-time work and the wife through her intermittent, part-time work. The wife graduated from medical school in 1989 and completed her residency in 1994 at which time the family moved to Wyoming.

[¶ 5] The husband took a job at the National Elk Refuge in Jackson Hole, and, because the wife could not find suitable employment in Jackson, she and children moved to Cody where she commenced work for a pathologist at Big Horn Basin Pathology, Inc. In 1996, the wife entered into an agreement with the pathologist to purchase his business for $30,000 to be paid over five years. Also in 1996, the husband moved to Cody and took a job with the United States Fish and Wildlife Service as well as developing a radon detection and control business and doing some consulting for Integrated Pest Management. The husband also worked at various times for the pathology business as secretary/treasurer, general business manager, and bookkeeper. The purchase price of the pathology business was completely paid by July of 1999.

[¶ 6] The couple's marital difficulties began in 1988, and they attended marriage counseling. In early September of 1999, the wife's friend told her that the husband was preparing to file for divorce. The wife responded by filing for divorce against the husband on September 8, 1999. In October 1999, approximately one month after the divorce action was filed, the parties jointly applied for a loan to purchase the residence the husband was living in at the time of the divorce trial. In the loan application, signed by both the husband and the wife, the pathol-

ogy stock was listed with a value of $30,000. In January 2000, the husband ceased working for the pathology business.

[¶ 7] The parties vigorously litigated the appropriate and equitable division of property during a three-day divorce trial held in February 2001. Both parties submitted expert testimony regarding the manner in which the pathology business should be appraised. The wife's expert provided no opinion as to the specific value of the business; however, he did testify the value should be determined by adding the accounts receivable, discounted for monthly fluctuations and expenses, to the value of the hard assets. He contended there was no "blue sky" or good will because the business was wholly dependent on the wife's medical expertise. The wife testified the hard assets were worth $30,000, and a summary of the business records from July 1, 1999, through October 31, 2000, prepared in response to discovery requests indicated the accounts receivable were $72,481.50 without deductions for expenses. She acknowledged that one piece of equipment had been purchased for $40,000 since the acquisition of the business, but she did not believe it was worth very much on resale. The husband's expert estimated the accounts receivable and the value of the good will based on the annual gross income generated and industry statistics to value the business at $394,772. The trial court determined the business was worth $50,000 and awarded $25,000 of that amount to the husband. The remainder of the marital estate was also divided equally between the husband and the wife. We observe, although not raised by the parties, the Decree of Divorce did not reflect the $25,000 award to the husband and did not appear to comply with W.R.C.P. 58(a) which requires both parties approve orders as to form. The wife, however, does not contest that the husband should receive the $25,000. The husband appealed contending the trial court erred by undervaluing the pathology business and not awarding him a larger proportion of the marital property to compensate him for his contributions to, and sacrifices for, the wife's medical career.

## STANDARD OF REVIEW

[¶ 8] We have often acknowledged:

There are few rules more firmly established in our jurisprudence than the proposition that the disposition of marital property is committed to the sound discretion of the district court. Judicial discretion is made up of many things, including conclusions reached from objective criteria, as well as exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We are required to ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

*Holland v. Holland*, 2001 WY 113, ¶ 8, 35 P.3d 409, ¶ 8 (Wyo.2001). As noted above, we consider the prevailing party's evidence to be true and give every reasonably drawn inference to it while we disregard all conflicting evidence. *Hensley v. Hensley*, 896 P.2d 115, 115 (Wyo.1995) (per curiam). Further, property divisions are complex and therefore require the trial court, in its discretion, to assess what is right under the circumstances while considering the respective merits and needs of the parties. *McCulloh v. Drake*, 2001 WY 56, ¶ 15, 24 P.3d 1162, ¶ 15 (Wyo. 2001). "An abuse of discretion occurs when the property disposition shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it." *Hall v. Hall*, 2002 WY 30, ¶ 12, 40 P.3d 1228, ¶ 12 (Wyo.2002).

## DISCUSSION

### A. Expert Witness Testimony

[¶ 9] On appeal, the husband contends, for the first time, the wife's expert, Lawrence McGovern, was not qualified to provide an expert opinion regarding the value of the business. It is interesting to note the husband actually tried to retain Mr. McGovern as his expert prior to trial. Further, the husband made no objection to this witness' qualifications or expertise prior to or during trial. *See Alexander v. Meduna*, 2002 WY 83, ¶ 21, 47 P.3d 206, ¶ 21 (Wyo.2002);

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). He did make a number of objections to Mr. McGovern's testimony on the basis that Mr. McGovern lacked foundation for his opinions, and the trial court, for the most part, overruled these objections. We generally will not address issues raised for the first time on appeal. *Parsons v. Parsons*, 2001 WY 62, ¶ 13, 27 P.3d 270, ¶ 13 (Wyo.2001); *Pace v. Pace*, 2001 WY 43, ¶ 22, 22 P.3d 861, ¶ 22 (Wyo.2001). Furthermore, as we remarked in *Betzle v. State*, 847 P.2d 1010, 1022 (Wyo.1993):

> Had an objection been posed to the expertise of this witness on the ground that [he] lacked the qualification or training essential to an expression of an opinion as an expert in [his] field or if voir dire had been requested with respect to [his] qualifications, as a party must do to assign as error the lack of expertise, we would have a more adequate record to consider.

■ [¶ 10] Mr. McGovern was an independent consultant who provided advice to a variety of medical concerns, including Harvard Medical School, regarding the acquisition and sale of medical practices and physician recruitment. Although Mr. McGovern did not have a college degree, he had over fourteen years of practical experience in the acquisition and operation of medical practices and had worked in administration in the medical field since the 1970s. He also had knowledge of the medical communities in northwest Wyoming and adjacent areas of Montana. Given that evidence, we cannot conclude the trial court abused its discretion by permitting him to testify. Unless an expert witness is clearly unqualified, questions concerning the nature of his qualifications

normally go to the weight accorded the witness' testimony rather than the admissibility of his testimony. *Seivewright v. State*, 7 P.3d 24, 31 (Wyo.2000).

## B. Value of the Business

■ [¶ 11] The husband failed to persuade the trial court that the pathology business was worth substantially more than the purchase price plus the value of the hard assets. In this appeal, he asks this court to substitute its judgment for that of the trial court. To do so, we must be convinced the trial court abused its broad discretion in dividing the marital property. After a careful review of the record, we are not convinced any such abuse of discretion occurred. The husband alleges the trial court's findings do not provide sufficient detail concerning the court's reasoning regarding the value of the pathology business. This argument lacks merit because the record does not reflect a request for special findings pursuant to W.R.C.P. 52(a)[2] was ever made. Without such a request, we presume the trial court made all appropriate findings supported by the evidence.

> A failure of a court to mention the specific factors does not mean that they were not considered. *In the absence of special findings of fact, this court considers that the judgment of the trial court carries with it every finding of fact necessary to support the judgment and decree.* It is not a function of this court to divide property in the first instance.

*Barney v. Barney*, 705 P.2d 342, 345 (Wyo. 1985) (citations omitted & emphasis added); *see also Parsons*, 2001 WY 62, ¶ 11, 27 P.3d 270.

2. W.R.C.P. 52(a) provides:

(a) General and Special Findings by Court. Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its conclusions of law; provided, that without such request the

court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, the same may be considered on appeal. Requests for findings are not necessary for purposes of review. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in subdivision (c) of this rule.

[¶ 12] We agree the record must contain sufficient evidence to support the court's distribution of property. *Bricker v. Bricker*, 877 P.2d 747, 751 (Wyo.1994). We have held the trial court does not abuse its discretion when it values contested property within the range of both parties' appraisals. *McLoughlin v. McLoughlin*, 996 P.2d 5, 7 (Wyo.2000). We have also held, when the value of the parties' business property is questioned, even though an appraisal "may" be helpful, it is not absolutely necessary. *Bricker*, 877 P.2d at 751; *Klatt v. Klatt*, 654 P.2d 733, 737 (Wyo.1982). In this instance, the trial court's value of $50,000 was reasonable when considered in light of the evidence.

[¶ 13] Approximately one month after the divorce action was filed, the husband signed a loan application in which he and the wife listed the value of the pathology stock at $30,000. The mortgage application form provided, immediately preceding the parties' signatures:

> I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application *and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties* ... and liability for monetary damages to the Lender, its agents, ... and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

(Emphasis added.) The parties made this application in order to purchase the residence the husband was living in at the time of the divorce trial. The husband contends the wife completed the application, and he did not read it. However, he did certify the information was correct and directly benefited from the loan which funded the purchase of his personal residence.

[¶ 14] The wife contended the value of the business should be determined by adding the accounts receivable, properly discounted for expenses, to the value of the hard assets. She testified outstanding accounts receivable were approximately $72,000, the acquisition price was $30,000, and assets purchased after acquisition were not of significant value. While arguing expenses must be considered and deducted from the accounts receivable, the wife did not provide the court with the amount of those expenses.

[¶ 15] The husband's expert, Richard Holdren, took an entirely different tack contending industry data supported a much higher value based upon the business' gross annual income, which was over $500,000 in 1999 and over $750,000 in 2000, and the good will. While Mr. Holdren was certainly qualified to perform an appraisal of a pathology business, having performed approximately 1,500 such appraisals nationwide, he had no knowledge of the business climate for a pathology business in Wyoming in general, or specifically in the Big Horn Basin. He admitted he did not have all the financial information he usually relied on to value such a business, such as accurate records of accounts receivable and expenses, and he had to estimate certain figures from trade sources. In addition, he admitted his evaluations usually exceeded the actual sales price for the businesses by twenty percent and were usually inflated by twelve percent for a sales commission. Despite his lack of knowledge of the local market conditions for a pathology practice, he calculated a good will value for the business of $206,243.33 and incorporated this figure with his other computations to conclude the business was worth $394,772. The trial court discounted Mr. Holdren's opinion as follows:

> The Big Horn Basin Pathology business is awarded to [the wife]. It has a reasonable fair market value of $50,000. [The wife] shall pay [the husband] $25,000 for his share. I do not find that there is any "goodwill" value to this business. Its income is solely dependent upon the work and skills of [the wife]. These are not assets that can be sold to another physician. For the most part, the business contracts can be terminated by either party on short notice. Their value cannot be transferred but depends upon the efforts and skills of the physician in charge of the business. [*The husband's*] *expert did not have sufficient information to deliv-*

*er a persuasive opinion as to [the ] value of the business. He did not consider the purchase price paid by [the wife ]. He did not have any comparable sales figures nor any offers to purchase this business.* When the parties applied for a loan in October of 1999, they valued the business at $30,000.

(Emphasis added.)

[¶ 16]   A failure of proof by a party upon whom the burden of proof rests must accrue to the benefit of the party who opposes the issue. *Klatt*, 654 P.2d at 737; *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978). The wife came forward with evidence, though perhaps not overwhelming in nature, of the value of the business. Once the wife made a prima facie showing, the evidence was entitled to stand unless controverted. *Ferguson v. Ferguson*, 481 P.2d 658, 659 (Wyo.1971). If evidence was available which would have refuted this proof, it was incumbent upon the husband to produce it at the trial. *Id.* This is the essence of our adversarial process. The husband's expert was not provided all the information necessary to make a more credible appraisal. The trial court discounted his opinion for this reason. It is reasonable to infer that the husband, as the former secretary/treasurer and business manager, had knowledge of the business and what records would exist regarding the value. The husband asserts the wife thwarted his efforts to obtain the detailed financial information necessary to perform a more thorough analysis. The wife contends she had no independent knowledge of the details of the business finances and she advised the husband he could obtain any information he required from the accountant and the current business manager. The husband's counsel conceded at oral argument before this court that the husband did not pursue a motion to compel in order to obtain the necessary financial information though the action had been pending for over a year.

[¶ 17]   The husband's complaint that the trial court completely disregarded accounts receivable in its determination of value is unfounded. The $50,000 value exceeded both parties' estimates of the value of the "hard assets" by $20,000; consequently, we can infer some value for the accounts receivable was included. A reasonable interpretation of the evidence supports some deduction from the estimated accounts receivable for expenses and uncollectable accounts. The court made a reasonable judgment given the limited help it received from the parties in determining the exact amount of those deductions. In addition, if the husband's valuation of $394,772 is reduced to account for the thirty-two percent padding that his expert conceded may have occurred in his appraisal and to exclude the $206,243.33 good will value rejected by the trial court, only $62,201.63 remain. The trial court's value of $50,000 is well within the range of that number and the wife's number.

[¶ 18]   In *Holland*, 2001 WY 113, 35 P.3d 409, the husband similarly complained about the district court's division of marital property and argued the court should have explained a portion of the award to the wife which appeared to be intended to balance the disparity created by the award of an investment account to the husband. This court responded:

> Husband contends that this Court must be able to ascertain with certainty what the basis for that $135,000.00 payment is. The contrary is true. Husband had the burden of demonstrating that the evidence adduced before the district court did not support the property distribution as a whole. This he has failed to do.

2001 WY 113, ¶ 9, 35 P.3d 409. We find ourselves in the same predicament here. The husband, despite not requesting findings pursuant to W.R.C.P. 52(a), complains that the trial court did not explain the basis for its determination of the value for the business. However, the record contains adequate evidence to support a value in the range of the court's finding, and the trial court found the husband's evidence of a higher value to be unpersuasive. Given those facts, we cannot conclude the trial court abused its discretion in determining the pathology business was worth $50,000.

**C.   Equitable Division of Marital Estate**

[¶ 19]   The husband contends he facilitated the wife's efforts to obtain her medi-

cal degree by supporting her while she went to medical school, at the expense of his own career, which allowed her to ultimately earn substantially more money than he was earning. He described accepting lateral transfers instead of promotions in order to remain close to the wife and support her and their family during her schooling. He claimed he was the primary financial support and caretaker for the family during this time and he gave up attending law school because the parties could not marry and pursue both careers at the same time. The husband claims his deference to the wife's career resulted in her earning approximately $143,500 annually while he was earning approximately $57,450 annually from his federal employment ($44,450) and his part-time employment with the pathology business ($13,000). On this basis, he argues the trial court abused its discretion by refusing to consider awarding him more than half of the marital assets to offset the sacrifices he made and the corresponding detrimental impact to his earning capacity.

[¶ 20] Pursuant to Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2001):

> [T]he court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

The decision letter dispels the husband's accusation the court arbitrarily refused to consider his argument and instead reflects the court carefully considered his position and sets out the explicit reasons why the court concluded the facts did not support an increase in the proportion of the property awarded to the husband:

> [The husband] is not entitled to any reimbursement for career changes and adjustments. These are the compromises which are made by virtually every party to a marriage. [The wife] could just as well claim that she would have entered a more lucrative specialty if she had been single. [The husband] does not cite any law which

allows a party to receive compensation for what he or she might have been able to earn as a single person.

> [The husband] is not entitled to reimbursement for [the wife] having obtained a medical degree during the marriage. This is not a case where [the wife] filed for divorce shortly after graduation and left [the husband] without significant income or assets. Both parties had college degrees at marriage. [The husband] has a good job. Both benefitted from [the wife's] medical degree. [The husband] received compensation as an employee of the pathology business. They have accumulated a substantial amount of property.

[¶ 21] We have long recognized the trial court possesses a great amount of discretion in dividing marital property. *Hall*, 2002 WY 30, ¶ 14, 40 P.3d 1228. Just and equitable division of property is just as likely not to be equal. *Id.; Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo.2000). The trial court should consider all facts and circumstances surrounding the dissolution of the marriage in dividing a couple's marital assets. *Hall*, 2002 WY 30, ¶ 14, 40 P.3d 1228; *Carlton*, 997 P.2d at 1034.

[¶ 22] In this case, the trial court attempted to split the marital assets as equally as possible and ordered payments be made between the parties to balance the awards when the actual value of a hard asset granted to one party was disparate from the value of a similar asset granted to the other. By way of example, the trial court awarded the marital home to the wife and awarded a residence of lower value to the husband. However, it ordered the wife to pay the husband the $71,465 difference between the values of the two homes.

[¶ 23] The trial court was not persuaded that the husband's support for the wife's education made a significant difference in the equities and concluded the circumstances were not similar to the *Grosskopf v. Grosskopf*, 677 P.2d 814 (Wyo.1984), case where a husband, who had been supported financially by the wife in pursuit of his professional education, filed for divorce immediately after graduation. In this case, the evidence showed both parties assisted in supporting

the family during the medical school years, and the trial court found, in the years since the wife graduated from medical school, the husband benefited equally from the income she earned as a result of her medical degree.

[¶ 24] We decline to micromanage the disposition of marital property by the trial courts. Suffice it to say, it is clear the trial court in this case tried to divide the marital property in half by awarding assets and cash of $331,822 to the husband and $321,897 to the wife. We are unable to identify any manifest abuse of discretion in the division of this marital estate. *Carlton,* 997 P.2d at 1032.

## D. Procedural Issue Form of Decree

[¶ 25] The Decree of Divorce fails to set forth the $25,000 cash award to the husband for his share of the business as described in the decision letter. The appropriate procedure for drafting and approving orders is provided in W.R.C.P. 58(a) (emphasis added):

(a) Presentation. Subject to the provisions of Rule 55(b) and unless otherwise ordered by the court, written judgments or orders shall be presented to the court within 20 days after its decision is made known. ***Before submitting the judgment or order, the party drafting it shall seek to secure the written approval as to form of the other parties. If, within 10 days, approval as to form is not obtained, the party drafting the form of judgment or order may forward the original to the court and serve a copy on the other parties with a notice advising objections must be made within 10 days. If no written objection is timely filed, the court may sign the judgment or order.*** If objection is filed, the court will resolve the matter with or without a hearing. A party objecting shall submit an alternative form of judgment or order with the objection.

[¶ 26] The decision letter indicates the court asked the wife's attorney to prepare the order, though we cannot discern the author from the face of the document nor does the document have a place for the parties to sign to indicate their approval as to form. The findings and conclusions must be contained in an order signed by the judge and entered upon delivery to the clerk of court. W.R.C.P. 58(c). The decree awards the business to the wife without mentioning the $25,000 payment to the husband for his share of the value of the business. The provisions of W.R.C.P. 58(a) are intended, at least in part, to avoid just this kind of procedural gaffe by ensuring both parties review and approve the proposed order before it is sent on to the trial court for signature. If there is an objection, the court can resolve it with notice to all parties. In this instance, the parties do not raise and, we presume, inadvertently overlooked the omission of the $25,000 award from the Decree of Divorce. The trial court undeniably intended for the husband to receive that amount for his one-half interest in the pathology business. For this reason, we remand the case to the trial court with instructions the Decree of Divorce be conformed to include the $25,000 award to the husband.

[¶ 27] Affirmed in all substantive respects and remanded for conformation of the Decree of Divorce consistent with this opinion.