2005 WY 91

**Patrick F. MADIGAN, Appellant (Defendant),**

v.

**Tammy J. MAAS, Appellee (Plaintiff).**

No. 04–173.

Supreme Court of Wyoming.

Aug. 11, 2005.

Rehearing Denied Sept. 15, 2005.

Carol A. Serelson, Cheyenne, Wyoming, for Appellant.

Sasha Johnston of Woodard & White, P.C., Cheyenne, Wyoming, for Appellee.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The appellant, Patrick F. Madigan (Madigan) and the appellee, Tammy J. Maas (Maas) married in 1994. They divorced in 2004. In this appeal, Madigan challenges the district court's property division in that divorce. We will affirm.

## ISSUES

[¶ 2] Madigan presents the following issues for our review:

1. Whether the decree of divorce should be corrected to conform to the decision letter of the district court?

2. Whether the monetary award of $22,000.00 to Maas must be adjusted because it is contrary to the evidence and clearly erroneous?

## *FACTS*

[¶ 3] Madigan and Maas married in 1994. They adopted one child in 1999, custody of whom is not at issue in this appeal. Both parties owned homes at the time of their marriage. They sold both and purchased a new house. Maas sold her home first and used the $22,833.00 in proceeds as a down payment on the new house (the John Drive house). Madigan's home then sold, yielding $25,344.00. Madigan used part of this money to settle personal debts and he also paid Maas $7,000.00, intended as a contribution toward the down payment on the John Drive house.

[¶ 4] Madigan and Maas lived in the John Drive house until 2002, when Madigan took a new job and moved to Monticello, Utah. Maas and the parties' daughter remained in Cheyenne, and Madigan traveled home on a regular basis to be with the family. As a result of Madigan's relocation, the parties decided to sell the John Drive house, which sale resulted in a $100,000.00 net profit. $54,000.00 of the proceeds were used as a down payment on a new house in Cheyenne (the Belmont house), $16,000.00 went toward the down payment on a house in Monticello (the Monticello house), and the remaining $30,000.00 was set aside to be used in remodeling the Belmont house.

[¶ 5] In August of 2003, Maas filed for divorce. Shortly thereafter, Madigan requested, and was granted, a transfer back to Cheyenne. Madigan purchased a home in Cheyenne (the Crestline house) and listed the Monticello house for sale. The parties agreed out of court on an appropriate custody arrangement for their child, and in March of 2004, a trial was held on the property division issues. At the close of evidence, the district court requested that the parties submit written closing arguments, including a statement of their respective proposals for the property division. After receiving the parties' closing arguments, the district court issued its decision letter on April 12, 2004. The one-page decision letter read as follows:

Dear Counsel:

I've reviewed your written summations. The Court will adopt the distribution and allocation urged in Tammy Maas' submittal including the items incorporated by reference with the exception that Ms. Maas will pay to Mr. Madigan the sum of $22,000.00 to reconcile the interests in the Belmont residence. The ring and bracelet will be sold by Ms. Maas and the proceeds equally divided. So, each will retain the accounts in their respective names.

The parties will each retain their own retirement interests and accounts. It is not the sort of case that would call for any division of these items.

Each party will pay the fees and costs incurred by the party. [Maas' attorney] will please prepare the decree.

On May 3, 2004, Maas submitted a decree of divorce to the district court pursuant to W.R.C.P. 58.[1] Madigan did not object to the

---

1. **Rule 58. Entry of judgment or order**

(a) *Presentation.*—Subject to the provisions

form of the decree, and the decree of divorce was entered on May 19, 2004.

[¶ 6] With respect to the parties' real property, the decree of divorce awarded Maas the Belmont house and awarded Madigan the Monticello house and the Crestline house. Also, each party was awarded his or her separate accounts and personal property, except that Maas was awarded fifty shares of XM Satellite Radio (XMSR) stock that was in Madigan's name. Finally, Maas was ordered to pay Madigan $22,000.00 to settle his share of the equity in the parties' real property.

[¶ 7] On May 25, 2004, Madigan filed a Motion to Correct Decree of Divorce to Conform to Decision Letter and/or to Correct Clerical Error. In this motion, Madigan asserted that the decree of divorce's award of the XMSR stock to Maas was inconsistent with the decision letter's statement that the parties should retain their separate accounts, and that the decree of divorce should be corrected to provide that Madigan receive the stock with no credit to Maas for its value. Madigan filed another motion on June 1, 2004, titled Motion for Court to Reconsider Decision and Clarify Terms as to Sale of Jewelry. In that motion, Madigan claimed, among other things, that the $22,000.00 equity settlement payment should actually be $41,494.34. He asserted that the $22,000.00 figure was based on incorrect numbers. Maas responded to both motions, and on June 29, 2004, the district court entered or-

ders denying both motions. Madigan filed a timely appeal.

## STANDARD OF REVIEW

■ ■ [¶ 8] We have often acknowledged:

"There are few rules more firmly established in our jurisprudence than the proposition that the disposition of marital property is committed to the sound discretion of the district court. Judicial discretion is made up of many things, including conclusions reached from objective criteria, as well as exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We are required to ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious."

*Holland v. Holland,* 2001 WY 113, ¶ 8, 35 P.3d 409, ¶ 8 (Wyo.2001).... [W]e consider the prevailing party's evidence to be true and give every reasonably drawn inference to it while we disregard all conflicting evidence. *Hensley v. Hensley,* 896 P.2d 115, 115 (Wyo.1995) (per curiam). Further, property divisions are complex and therefore require the trial court, in its discretion, to assess what is right under the circumstances while considering the respective merits and needs of the parties.

of Rule 55(b) and unless otherwise ordered by the court, written judgments or orders shall be presented to the court within 20 days after its decision is made known. Before submitting the judgment or order, the party drafting it shall seek to secure the written approval as to form of the other parties. If, within 10 days, approval as to form is not obtained, the party drafting the form of judgment or order may forward the original to the court and serve a copy on the other parties with a notice advising objections must be made within 10 days. If no written objection is timely filed, the court may sign the judgment or order. If objection is filed, the court will resolve the matter with or without a hearing. A party objecting shall submit an alternative form of judgment or order with the objection.

(b) *Form of Entry.*—Subject to the provisions of Rule 54(b), in all cases, the judge shall promptly settle or approve the form of the judgment or order and direct that it be entered by the clerk. Every judgment shall be set forth

on a separate document, shall be identified as such, and may include findings of fact and conclusions of law. The names of all parties shall be set out in the caption of all final orders, judgments and decrees. All judgments and orders must be entered on the journal of the court and specify clearly the relief granted or order made in the action.

(c) *Time of Entry.*—A judgment or final order shall be deemed to be entered whenever a form of such judgment or final order, signed by the trial judge, is filed in the office of the clerk of the court in which the case is pending. Entry of the judgment shall not be delayed, nor the time for appeal extended, in order to tax costs or award fees, except that, when a timely motion for attorneys fees is made under Rule 54(d)(2), the court, before the appellate court acquires jurisdiction, may order that the motion have the same effect on the time for appeal for all parties as a timely motion under Rule 59.

*McCulloh v. Drake,* 2001 WY 56, ¶ 15, 24 P.3d 1162, ¶ 15 (Wyo.2001). "An abuse of discretion occurs when the property disposition shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it." *Hall v. Hall,* 2002 WY 30, ¶ 12, 40 P.3d 1228, ¶ 12 (Wyo.2002).

*Root v. Root,* 2003 WY 36, ¶ 8, 65 P.3d 41, 44 (Wyo.2003). The district court's decision in a property division case is afforded considerable deference. *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo.2003). Therefore, the division of property should not be disturbed except on clear grounds since the district court is usually in a better position than the appellate court to judge the parties' respective merits and needs. *Id.*

## DISCUSSION

### The XMSR Stock

■ [¶ 9] In Madigan's first appellate issue, he asserts that the divorce decree should be corrected to conform to the district court's decision letter. The decision letter provided that "each [party] will retain the accounts in their respective names." However, the divorce decree awarded Madigan the accounts in his name, "except for 50 shares of XMSR stock which shall be awarded to [Maas]." Madigan contends that this inconsistency between the decision letter and the divorce decree is the result of a mistake by the district court and should be corrected. He urges that we remand the case with instructions to conform the divorce decree to the decision letter.

[¶ 10] In support of this contention, Madigan cites *Root,* 2003 WY 36, ¶ 25, 65 P.3d at 49. There, the district court's decision letter stated that the husband was to receive $25,000.00 from the wife. *Id.* The divorce decree, however, omitted this award. *Id.* Neither party raised the omission on appeal. *Id.* at ¶ 26, 65 P.3d at 49. However, because the district court undeniably intended the husband to receive this amount, we remand-

ed the case with instructions to conform the divorce decree to the decision letter. *Id.*

■ [¶ 11] Unlike the omission of $25,000.00 in *Root,* the record in this case does not indicate that the award of the XMSR stock to Maas resulted from an oversight or mistake. Although the district court's decision letter provided that each party would retain his or her own accounts, it also stated that it would adopt Maas' proposed distribution, which proposal included a request for an accounting of the XMSR stock. The divorce decree specifically addressed the stock and clearly provided for its disposition. The decree of divorce read:

> [Madigan] is awarded ... all personal property, including retirement accounts, investment accounts, bank accounts, vehicles, and notes, and reimbursement payments solely in his name, *except for 50 shares of XMSR stock which shall be awarded to [Maas]. If [Madigan] chooses to retain this stock instead of transferring it to [Maas], [Maas] shall receive a credit of $1300 toward satisfaction of the equity payment in paragraph 9 of this decree.*

(Emphasis added.) The adoption of Maas' proposed distribution and subsequent award of the XMSR stock does not appear to be a mistake, but rather an exercise of the district court's discretion. We have held the district court may, in its discretion, make changes in the final order from what was indicated in the decision letter.

The trial judge's decision letters, discussing legal principles and expressing his conclusions of law, [do] not constitute a judicial determination which may be considered a final order. We analogize that, if a trial court in exercise of its discretion may modify tentative decisions until entry of the final order, it does not err in rendering a decree with changed provisions.

*Broadhead v. Broadhead,* 737 P.2d 731, 733 (Wyo.1987).[2]

---

2. If the decree of divorce contains terms different from those contained in the decision letter and a party believes that the difference is the result of a mistake or omission, the proper remedy is to object to the order pursuant to W.R.C.P. 58, so that the discrepancy can be resolved. *Root,* 2003 WY 36, ¶ 26, 65 P.3d at 49. Although Madigan was provided a copy of the decree of divorce containing the errors he now alleges, he failed to object as allowed in W.R.C.P. 58. While this

[¶ 12] The absence of mistake in awarding the XMSR stock to Maas is further evidenced by the district court's denial of Madigan's post-trial motion to correct the decree of divorce, wherein Madigan asserted that the "Decree of Divorce should be corrected to provide that [he] receive the XMSR stock with no credit to [Maas] for its value." Had the district court erroneously awarded Maas the XMSR stock, surely it would have granted Madigan's motion and corrected the decree of divorce.

[¶ 13] We conclude that the award of the XMSR stock to Maas was not the result of a mistake or omission, but rather an exercise of the district court's discretion in dividing the parties' property. Madigan does not argue that the district court abused its discretion in making that award, and we find nothing in the record indicating such an abuse. Therefore, we affirm the award of the XMSR stock to Maas.

### The $22,000.00 Equalization Payment

[¶ 14] In Madigan's second appellate issue, he asserts that the $22,000.00 equalization payment, which the district court ordered Maas to pay to Madigan, is inconsistent with the evidence and improperly calculated. The $22,000.00 figure was based on calculations set out in Maas' written closing statement. After the close of evidence, the district court requested that the parties submit their closing arguments in writing. Maas' proposed distribution included the following figures:

**Figure 1: Refund of Investment**

|   |   |   |
|---|---|---|
| | $42,000 | [Madigan]'s ½ of down payment [on the Belmont house] + remodeling |
| + | $ 4,000 | [Madigan]'s ½ of mortgage payments [on the Belmont house] since August, 2003 |
| - | $ 23,000 | [Maas' down payment on the John Drive house] |
| + | $ 7,000 | [Madigan]'s claimed reimbursement to [Maas] |
| - | $ 8,000 | [Maas'] ½ of down payment on [Monticello] house |
| | $ 22,000 | [Madigan]'s net share |

The district court adopted Maas' proposed property distribution. On appeal, Madigan takes exception to the district court's use of two of the above figures: the $23,000.00—representing the amount Maas paid as a down payment on the John Drive house, and the $4,000.00—representing the amount Madigan contributed to the Belmont house mortgage after Maas had filed for divorce.

[¶ 15] With regard to the $23,000.00, Madigan asserts that the district court should have used $11,500.00 instead of $23,000.00. In his appellate brief, Madigan articulates his argument as follows:

At the time [Maas] contributed the $23,000.00 to the down payment, she contributed her half of the down payment, which was $11,500.00, plus [Madigan]'s half of the down payment, his $11,500.00. Had [Madigan] repaid her nothing, [Maas] would have overpaid $11,500.00, not $23,000.00 as indicated [above].

Madigan claims that the $23,000.00 figure used by the district court is "against all the weight of the evidence and is based on a mathematical miscalculation." However, he cites no evidence which would mandate a different result, nor does he demonstrate the mathematical error. Rather, Madigan's argument appears to reflect nothing more than his apparent belief that the down payment on the John Drive house should have been allocated equally between him and Maas. We recognize that the use of the $23,000.00 figure may not reflect an exact 50/50 distribution; nevertheless, we have stated that "[a] just and equitable distribution is as likely as not to be unequal." *Hoffman v. Hoffman*, 2004 WY 68, ¶ 12, 91 P.3d 922, 926 (Wyo. 2004); *Sweat v. Sweat*, 2003 WY 82, ¶ 6, 72 P.3d 276, 278 (Wyo.2003). The record clearly shows that Maas paid the $23,000.00 down payment on the John Drive house and that Madigan later paid Maas $7,000.00 as reimbursement for a portion of that amount. We find nothing in the record indicating that the

failure does not preclude him from challenging the order on appeal, the issue might have been

more expeditiously resolved by using this procedure.

district court abused its discretion by allocating Maas and Madigan the amounts they contributed, rather than dividing the down payment equally. Without more, Madigan's conclusory statement that the down payment should have been divided equally falls well short of providing the "clear grounds" necessary for us to disturb the district court's property distribution. *Metz,* 2004 WY 3, ¶ 6, 61 P.3d at 385.

[¶ 16] Madigan's objection to the $4,000.00 figure stems from his contention that he should receive credit for *all* mortgage payments he contributed from the time he relocated to Monticello, and not just those made after Maas filed for divorce. Madigan asserts that instead of the $4,000.00, he should be entitled to a $9,900.00 credit. As support of this argument, he points to an in-court statement made by Maas during cross examination:

Q. You're willing to give [Madigan] credit for approximately 500—is it 500 or 550 he was paying toward the [Belmont] house payment?

A. We can say 550.

. . .

Q. So 550 would be an appropriate figure times 18 months, is that what it's been?

A. That would be approximately right.

Q. Whatever we figured to be a number of months, you agree that number . . . times 550, he should be given credit on Belmont?

A. Correct.

Q. So that's approximately 9,900, if we have the numbers correct. You would be willing to give him that credit?

A. Yes.

Maas' statement is the only evidence Madigan cites in support of his argument on this issue. In response, Maas points out that her statement was later clarified and corrected upon redirect, and that she clearly articulated her position in her closing statement, wherein she used the $4,000.00 figure instead of $9,900.00.

[¶ 17] Even if Maas had not clarified her original statement, the district court is not bound to adopt the testimony of either party. In *Hoffman,* 2004 WY 68, ¶ 11, 91 P.3d at 925, the wife testified that she did not think the husband should be responsible for all the parties' business debts. The district court, nevertheless, allocated those debts to husband. *Id.* at ¶ 13, 91 P.3d at 926. On appeal, the husband challenged the allocation of corporate debt to him claiming that "because Wife must be considered a reasonable person, and she didn't think it was fair, it must meet our standard for abuse of discretion that no reasonable person could abide by the result." *Id.* at ¶ 16, 91 P.3d at 926. In affirming the district court's decision we stated:

[I]t is the trial court that decides the equitable distribution of property. The trial court hears all the evidence, judges the credibility of the witnesses on all issues, and makes its determination regarding property distribution of all marital property after considering the statutory factors. Wife's isolated comment is but one piece of the puzzle and is not definitive for any purpose.

*Id.* Clearly, Madigan's reliance on Maas' isolated and disputed statement is insufficient to establish that the evidence does not support the use of the $4,000.00 figure, or that the district court abused its discretion.

[¶ 18] As a final point, we note that even if we were to find the district court's use of one or both of Maas' figures to be erroneous, we are required to examine the reasonableness of the district court's property division from the perspective of the overall distribution of marital assets and liabilities, rather than from a narrow focus on the effects of any particular disposition. *Sweat,* 2003 WY 82, ¶ 6, 72 P.3d at 278; *Carlton v. Carlton,* 997 P.2d 1028, 1032 (Wyo.2000). Madigan does not even attempt to show how the overall distribution is inequitable. The parties were each awarded real property, vehicles, household items, accounts, and retirement interests. To settle the equities in the parties' real property, Madigan was also awarded $22,000.00. This distribution, when viewed as a whole, does not shock the conscience of this Court nor do we find it to be so unfair and inequitable that reasonable people could not abide it.

## CONCLUSION

[¶ 19] The district court's award of the XMSR stock to Maas was not the result of an oversight or mistake by the district court, but was a result of the exercise of discretion. Further, the district court's adoption of Maas' proposed distribution, including use of the $23,000.00 and $4,000.00 figures, was not arbitrary, the result of a miscalculation, or an abuse of discretion.

[¶ 20]   Affirmed.